WISDOM, Circuit Judge:
This appeal calls upon us to decipher the jurisdictional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984. A brief history of the Act may cast some light on the nature of our task.
Years of effort to reform the bankruptcy laws culminated with the enactment of the Bankruptcy Reform Act of 1978.[1] As part of its overall goal to create a more efficient procedure for administering bankruptcies, the 1978 Act vested broad powers in the bankruptcy courts. This reform was short-lived. In 1982 the Supreme Court decided Marathon v. Northern Pipelines.[2] The Court declared the jurisdictional provision of the 1978 Act unconstitutional because, in short, it vested Article III judicial power in Article I judges. Courts were left to their own devices while Congress deliberated a response to Marathon. With prompting from bench, bar, and law professors with expertise in bankruptcy, Congress responded with the Bankruptcy Amendments and Federal Judgeship Act of 1984. Essentially, Congress reenacted the 1978 Act, but divided its jurisdictional grant into “core” proceedings, over which the bankruptcy courts exercise full judicial power — and “otherwise related” or “non-core” proceedings — over which the bankruptcy courts exercise only limited power. In this case, we must decide two issues: first, whether bankruptcy jurisdiction exists; second, if jurisdiction does exist, whether the bankruptcy court may proceed over this matter as a “core” or a “non-core” proceeding.
I.
This case results from a dispute among the directors/stockholders of a medical clinic. In 1981, Dr. James Wood and Dr. Arthur Wood, III, formed the Wayne Clinic, P.A., each becoming the owner of 1000 shares of stock. In March of 1984, Dr. James Wood and his wife, Carol Wood, filed a Chapter 11 bankruptcy petition in the Southern District Court of Mississippi. In May of 1985, Dr. Arthur Wood filed a complaint in the same court is alleging that in November of 1984, Dr. and Mrs. James Wood and Woodrow Barham, acting together as directors of the clinic, wrongfully issued additional stock to Dr. James Wood. The complaint stated that in the Spring of 1985, Dr. James Wood received a disproportionate distribution from the clinic as the result of the wrongful stock issuance in violation of the agreement between Dr. James Wood and Dr. Arthur Wood that they were to be equal partners in the clinic. The complaint seeks damages and declaratory relief.
The bankruptcy judge of the district denied the defendants’ motion to dismiss for lack of subject-matter jurisdiction and held that the matter was a core proceeding. On appeal to the district court, the court held *92 that the matter was neither a “core” proceeding, over which the bankruptcy judge had full judicial power, nor an “otherwise related” or “non-core” proceeding, over which the bankruptcy judge has limited judicial power. The court dismissed the complaint for lack of subject-matter jurisdiction. The plaintiffs appealed to this Court.
II.
The starting point in our analysis is 28 U.S.C. § 1334. In relevant part this provision provides:
(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[3]
Section 1334 lists four types of matters over which the district court has jurisdiction:
1. “cases under title 11”,
2. “proceedings arising under title 11”,
3. proceedings “arising in” a case under title 11, and
4. proceedings “related to” a case under title 11.
The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction. Our concern, however, is with the other proceedings listed in subsection 1334(b), over which the district courts have original, but not exclusive, jurisdiction.
There is almost no legislative history to guide us in interpreting the 1984 Act. Subsection 1334(b), however, was taken verbatim from subsection 1471(b) of the 1978 Act.[4] The legislative history and judicial interpretations of that Act therefore are instructive.[5]
Legislative history indicates that the phrase “arising under title 11, or arising in or related to cases under title 11” was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts.[6] Congress was concerned with the inefficiencies of piecemeal adjudication of matters affecting the administration of bankruptcies and intended to give federal courts the power to adjudicate all matters having an effect on the bankruptcy.[7] Courts have recognized that the grant of jurisdiction under the 1978 Act was broad.[8]
Nothing in Marathon suggests that we should read the corresponding provisions of the 1984 Act differently. The jurisdictional provision of the 1978 Act, section 1471, accomplished two things. First, subsection (b) vested an expansive bankruptcy jurisdiction in the district courts.[9] Second, subsection (c) conferred the power to exercise that jurisdictional grant in the bankruptcy courts.[10] The issue in Mara *93 thon was not the constitutionality of subsection (b), but the constitutionality of subsection (c). Marathon held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant encompassed proceedings too far removed from the “core” of traditional bankruptcy powers to allow them to be adjudicated by non-Artiele III judges.[11] The holding in Marathon suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by Congress; its concern is with the placement of that jurisdiction in non-Article III courts. In response to Marathon, Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter. Because Marathon did not compel Congress to reduce the scope of bankruptcy jurisdiction, it seems plain that Congress intended no change in the scope of jurisdiction set forth in the 1978 Act when it later enacted section 1334 of the 1984 Act.
The district court expressed its concern that an overbroad interpretation of section 1334 would bring into federal court matters that should be left to state courts to decide. We have also expressed the same concern.[12] There is no necessary reason why that concern must be met by restrictive interpretations of the statutory grant of jurisdiction under section 1334. The Act grants the district court broad power to abstain whenever appropriate “in the interest of justice, or in the interest of comity with State courts or respect for State law”.[13] The abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case.[14] Here, the possibility of abstention was not raised in the district court.14a
For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings “arising under”, “arising in a case under”, or “related to a case under”, title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least “related to” the bankruptcy. The Act does not define “related” matters. Courts have articulated various definitions of “related”, but the definition of the Court of Appeals for the Third Circuit appears to have the most support: “whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.” [15] This definition comports with the legislative history of the statutory predecessor to section 1334. Neither Marathon nor general concerns of comity counsel against its use. We adopt it as our own.
Applying this test to case before us, we find that the complaint is sufficiently related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334. The complaint against the bankruptcy debtors could have a conceivable effect on their bankruptcy. The plaintiff seeks to recover stock and monies that the debtors allegedly appropriated from the clinic. They seek to resolve the disputed allocation of interest in the clinic. To the extent that the debtors’ interest in *94 the clinic, their stock holdings, or their withdrawals are now property of the estate, the complaint against them has a potential effect on their estate.
The debtors argue that the complaint raises a post-petition claim that will not affect their bankruptcy.[16] Generally, post-petition claims are not dischargeable in bankruptcy and, therefore, do not affect the estate.[17] To fall within the court’s jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor.[18] Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no conceivable effect. First, the complaint raises a dispute over the division of ownership of the clinic. Because the debtors held their stock in the clinic before filing for bankruptcy, the disputed share is now part of the estate.[19] Second, the complaint seeks to recover stock and cash withdrawals made after the filing of the petition. Although post-petition acquisitions of the debtor are generally not part of the estate, they may be estate property in this case if considered income from pre-petition property.[20] We raise these possibilities, not to resolve them, for that matter is left to the district and bankruptcy courts to decide under federal law,[21] but to illustrate the conceivable effect of the complaint on the administration of the bankruptcy.
Defendant Woodrow Barham argues that even if the court has jurisdiction over the claims against Dr. James Wood and his wife, it does not have jurisdiction over him because he is not a debtor-in-bankruptcy. The Bankruptcy Rules incorporate the join-der provisions of the Federal Rules of Civil Procedure allowing the joinder of other defendants.[22] Joinder is allowed, however, only if an independent basis of federal jurisdiction exists to support the joined claim.[23] We find that the claim against Woodrow Barham is “related to” the Wood’s bankruptcy and, thus, its joinder is jurisdictionally supported.
The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if Dr. Wood and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing the complaint, the plaintiff challenged the combined actions of both the debtors and Bar-ham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham’s involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.[24]
III.
We have decided that subject-matter jurisdiction exists over this proceeding. We must now determine the placement of that jurisdiction. Our analysis turns to 28 U.S.C. § 157, the response of Congress to Marathon and its replacement for subsection 1471(c) of the 1978 Act. In contrast to *95 subsection 1471(c), section 157 does not give bankruptcy courts full judicial power over all matters over which the district courts have jurisdiction under section 1334. With respect to proceedings other than the bankruptcy petition itself, section 157 divides all proceedings into two categories. Subsection 157(b)(1) gives bankruptcy judges the power to determine “all core proceedings arising under title 11, or arising in a case under title 11” and to enter appropriate orders and judgments. Subsection 157(c)(2) gives the bankruptcy judge the limited power to hear “a proceeding that is not a core proceeding but that is otherwise related to a case under title 11” and to submit proposed findings of fact and conclusions of law to the district court, subject to de novo review. The essential distinction that must be made, therefore, is whether this action is a core or non-core proceeding.
The statute does not define core proceedings. Subsection (b)(2) does provide a nonexclusive list of examples, three of which are arguably relevant here:
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate ...;
....; and
(0) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....
We note that the last example is broadly worded; indeed, “proceedings affecting ... the estate” is similar in scope to the test of jurisdiction: proceedings having a “conceivable effect on the estate”. We decline, however, to give such a broad reading to subsection 157(b)(2)(0); otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act. That purpose is to conform the bankruptcy statute to the dictates of Marathon.[25]
Specifically, Marathon, involved an adversarial proceeding brought by the debtor-in-bankruptcy on a pre-petition claim arising under state substantive law against a defendant who had not filed a claim in bankruptcy. A plurality of the Supreme Court held that the proceeding could not be adjudicated by the bankruptcy court. The exact extent of Marathon’s holding is subject to debate. Certain principles can be extracted from its opinions, principles that apparently have been incorporated into the 1984 Act.
Justice Brennan, writing for the plurality, held that only controversies involving “public rights”, rights provided to an individual by Congress under one of its exceptional powers under the Constitution, may be removed from Article III courts and delegated to non-Article III tribunals.[26] Justice Brennan implicitly recognized that the exceptional powers of Congress under the bankruptcy clause may sometimes allow for such delegations of judicial power:
But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a “public right,” but the latter obviously is not.[27]
Concerning the latter controversy, he noted:
This claim may be adjudicated in federal court on the basis of its relationship to the petition for reorganization. But this relationship does not transform the state-created right into a matter between the Government and the petitioner for reorganization. Even in the absence of the *96 federal scheme, the plaintiff would be able to proceed against the defendant on the state-law contractual claims.[28]
Two points are suggested by this language. First, bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy or, in Justice Brennan’s words, controversies “at the .core of the federal bankruptcy power”. Second, controversies that do not depend on the bankruptcy laws for their existence — suits that could proceed in another court even in the absence of bankruptcy — are not core proceedings. These points are echoed by Chief Justice Burger in his dissent in which he characterized the plurality opinion as follows:
the Court’s holding is limited to the proposition ... that a “traditonal” state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an “Article III court”.[29]
Justice White expressed concern, however, that the plurality’s holding placed too much emphasis on the existence of state law issues in the proceeding before bankruptcy court:
Second, the distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings_ The crucial point to be made is that in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy — claims for goods sold, wages, rent, utilities, and the like.... Every such claim must be filed and its validity is subject to adjudication by the bankruptcy court. The existence and validity of such claims recurringly depend on state law. Hence, the bankruptcy judge is constantly enmeshed in state-law issues.[30]
Section 157 of the 1984 Act incorporates the principles suggested in the language of the Marathon opinions. The reference in the Act to “core” proceedings is taken directly from Justice Brennan’s description of matters that involve the peculiar powers of bankruptcy courts. The Act describes non-core proceedings as “otherwise related”, an apparent reference to Chief Justice Burger’s description of the Marathon proceeding as “related only peripherally to an adjudication of bankruptcy”. Mindful of the limitations of the plurality’s holding and of Justice White’s observations concerning state law, Congress added: “A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.”[31]
The meaning of core proceedings is illuminated also by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over “core proceedings arising under title 11, or arising in a case under title 11.” The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings “arising under” title 11, “arising in” title 11 cases, and “related to” title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of “arising under” and “arising in” proceedings.
Congress used the phrase “arising under title 11” to describe those proceedings that involve a. cause of action created or determined by a statutory provision of title ll.[32] Apparently, the phrase was taken from 28 *97 U.S.C. § 1331, conferring federal question jurisdiction in which it carries a similar and well-accepted meaning. The meaning of “arising in” proceedings is less clear, but seems to be a reference to those “administrative” matters that arise only in bankruptcy cases.[33] In other words, “arising in” proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.
As defined above, the phrases “arising under” and “arising in” are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an “otherwise related” or non-core proceeding.
Finally, the interpretation of core proceeding based on its equation with “arising under” and “arising in” proceedings comports with the interpretation suggested by Marathon. Justice Brennan’s description of “core” matters parallels that of matters “arising under” title 11—matters invoking a substantive right created by federal bankruptcy law. Moreover, his comment that the matter could have proceeded absent the bankruptcy suggests a contrast with “arising in” proceedings—matters that could arise only in bankruptcy.
We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. The proceeding before us does not meet this test and, accordingly, is a non-core proceeding. The plaintiffs suit is not based on any right created by the federal bankruptcy law. It is based on state created rights.[34] Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court.
The plaintiff argues that his action is literally a claim against the estate, which is expressly defined as a core proceeding by section 157(b)(2)(B).[35] We disagree. In determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding.[36] The form of this action is not that of a “claim” as that term is used in bankruptcy law. A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules.[37] The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution.[38] Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim. *98 Here, the plaintiff has not filed a proof of claim and has not invoked the peculiar powers of the bankruptcy court.
The substance of this action does not support a finding of core status. The essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law. The suit does not raise as primary issues such matters as discharge-ability, allowance of the claim, or other bankruptcy matters.[39] Conceivably, a final judgment in this proceeding in the plaintiffs favor may lead to proceedings to allow the claim or to discharge the debt. At this juncture, however, these concerns are speculative and insubstantial issues in the proceeding. The plaintiff’s suit is not a core proceeding.
The judgment of the district court is VACATED and the case is remanded to the district court for further proceedings consistent with this opinion.

. Pub.L. 95-598, 92 Stat. 2549.

. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Marathon provided the impetus for the new Act. See King, Jurisdiction and Procedure under the Bankruptcy Amendments of 1984, 38 Vand.L.Rev. 625 (1985); Note, The Bankruptcy Act of 1984; Marathon Revisited, 3 Yale L. & Pol.Rev. 231 (1984).

. Pub.L. 98-353, 98 Stat. 333.

. Section 1471(b) of the 1978 Act read, in pertinent part:
the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

. Carlton v. BAWW, Inc., 751 F.2d 781, 787 n. 7 (5th Cir.1985); In re Salem Mortgage Co., 783 F.2d 626, 632-34 (6th Cir.1986); In re Cemetery Development Corp., 59 B.R. 115, 119-21 (Bankr.M.D.La.1986).

. S.Rep. No. 989, 95th Cong., 2d Sess., 153-54 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5939-40.

. Id.

. Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984); In re Salem Mortgage Co., 783 F.2d 626, 633-34 (6th Cir.1986); In re Cemetery Development Corp., 59 B.R. 115, 121 (Bankr.M.D.La.1986).

. See note 4.

. Section 1471(c) of the 1978 Act read:
The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

. See Marathon, 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615.

. See Matter of Paso del Norte Oil Co., 755 F.2d 421, 425 (5th Cir.1985).

. 28 U.S.C. § 1334(c)(1).

. In re Salem Mortgage Co., 783 F.2d 626, 635 (6th Cir.1986).

. On remand the district court may, of course, consider the abstention issue.

. Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (emphasis added); accord In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir.1987); In re Salem Mortgage Co., 783 F.2d 626, 634 (6th Cir.1986); In re Globe Parcel Service, 71 B.R. 323, 326 (E.D.Pa.1987); In re World Financial Services Center, Inc., 64 B.R. 980, 988 (Bankr.S.D.Cal.1986); In re Cemetery Development Corp., 59 B.R. 115, 121 (Bankr.M.D.La.1986).

. The complaint challenges the issuance of stock in November of 1984 and the withdrawal of money in Spring of 1985, both of which occurred after the filing of the bankruptcy petition in March of 1984.

. See Weintraub & Resnick, Bankruptcy Law Manual ¶5.07 (1986).

. See In re Cemetery Development Corp., 59 B.R. 115, 121 & n. 13 (Bankr.M.D.La.1986).

. See 11 U.S.C. § 541.

. See Id. § 541(a)(6), 541(a)(7).

. See 28 U.S.C. § 1334(d); Texas v. Wellington Resource Corp., 706 F.2d 533, 536 (5th Cir.1983).

. See Bankr.Rules 7018-7020.

. Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984).

. In re Salem Mortgage Co., 783 F.2d 626, 634 (6th Cir.1986); In re Zamost, 7 B.R. 859 (Bankr.S.D.Cal.1980).

.Numerous courts have noted the necessity of defining core proceedings narrowly so as to conform to the constitutional proscription of Marathon. E.g., Piombo Corp. v. Castlerock Properties, 781 F.2d 159, 162 (9th Cir.1986); In re Satelco, Inc., 58 B.R. 781, 788 (Bankr.N.D.Tex.1986); In re American Energy, Inc., 50 B.R. 175, 178 (Bankr.D.N.D.1985).

. 458 U.S. at 69-70, 102 S.Ct. at 2870-71, 73 L.Ed.2d at 614.

. Id. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615 (emphasis added).

. Id. at 72 n. 26, 102 S.Ct. at 2872 n. 26, 73 L.Ed.2d at 615 n. 26.

. Id. at 92, 102 S.Ct. at 2882, 73 L.Ed.2d at 628 (Burger, C.J., dissenting).

. Id. at 96-97, 102 S.Ct. at 2884-85, 73 L.Ed.2d at 631 (White, J., dissenting).

. 28 U.S.C. § 157(b)(3).

. See 1 Collier on Bankruptcy ¶ 3.01 at 3-23 (1987).

. Id. at 3-27.

. We are mindful that, alone, this circumstance should not be dispositive. 28 U.S.C. § 157(b)(3).

. "Core proceedings include ... (B) allowance or disallowance of claims against the estate_” 28 U.S.C. § 157(b)(2)(B).

. See In re World Financial Services Center, Inc., 64 B.R. 980, 984-87 (Bankr.S.D.Cal.1986); In re Satelco, Inc., 58 B.R. 781, 786-89 (Bankr.N.D.Tex.1986).

. See Bankr.Rules 3001-3002.

. See In re Criswell, 44 B.R. 95 (Bankr.E.D.Va.1984); Distinguishing Core from Non-Core Proceedings, Norton Bankr.L.Adviser, No. 1, Jan. 1985, p. 2.

. Cf. Matter of Colorado Energy Supply, 728 F.2d 1283, 1285-86 (10th Cir.1984) in which the court held that a claim for rents under state law was not a "traditional state claim" within the meaning of Marathon because the plaintiff sought also preferred status under the bankruptcy laws.