In re BLISS TECHNOLOGIES, INC., Debtor.

Bliss Technologies, Inc., by and through its Unsecured Creditors Committee, Plaintiff,

v.

HMI Industries, Inc., Mark A. Kirk, and Carl H. Young, Defendants.

Bankruptcy No. 00–40886.
Adversary No. 02–4085.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

April 14, 2004.

Robert A. Weisberg, Birmingham, MI, Joann A. Weatherford, Kemp, Klein, Umphrey, et al., Jack A. Gibson, Troy, MI, for Debtor.

Claretta Evans, Detroit, MI, for U.S. Trustee.

Clay E. Ottoni, Troy, MI, for Plaintiff.

Richard S. Gurbst, Cleveland, OH, for Defendants.

## OPINION REGARDING CORE/NON–CORE DETERMINATION IN ADVERSARY PROCEEDING

THOMAS J. TUCKER, Bankruptcy Judge.

At the request of Defendants, and in response to an Order of the United States District Court that denied Defendants' motion to withdraw the reference without prejudice,[1] this Court must determine whether Plaintiff's causes of action in this adversary proceeding are core or non-core under 28 U.S.C. § 157(b). *See* 28 U.S.C. § 157(b)(3). The parties have briefed this issue, and have agreed that the Court should make its determination based on the briefs, without a hearing or oral argument.

For the reasons stated in this opinion, the Court concludes that: (1) Count I of the adversary complaint, alleging a fraudulent transfer under state law and 11 U.S.C. § 544(b)(1), is a core proceeding; (2) Count II, seeking recovery of an avoided transfer under 11 U.S.C. § 550(a), is a core proceeding; and (3) Count III, alleging a pre-petition breach of fiduciary duty by Debtor's former officers and directors, is a non-core proceeding.

## I. Background.

Defendant, HMI Industries, Inc. ("HMI") was the parent company and sole shareholder of its subsidiary Bliss Manufacturing, Inc. ("Bliss"). Rhone Capital, LLC ("Rhone") agreed to purchase all of HMI's shares of Bliss under a stock purchase agreement dated December 17, 1997. Rhone assigned its right under the stock purchase agreement to Danube, Inc. ("Danube") on March 27, 1998. That same day, Danube acquired all of the shares of Bliss for approximately $31.25 million, and Danube and Bliss merged, leaving Bliss as the surviving entity. After the merger, Bliss changed its name to Bliss Technologies, Inc. ("Bliss Technologies" or "Debtor"). The Committee characterizes this transaction as a leveraged buy-out ("LBO") (First Am. Compl. (Docket # 45,) at ¶¶ 7–8, 10–14, 23–24.)

On January 21, 2000, Bliss Technologies filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. An official unsecured creditors' committee ("Committee") was appointed on February 2, 2000. On January 18, 2002, before confirmation of Debtor's Plan and with authorization from the Bankruptcy Court,[2]

---

1. (Order Denying Without Prejudice, Defs' Mot. to Withdraw Reference Pursuant to 28 U.S.C. § 157(d) (Docket # 23) at 5.)

2. *See* Order (i) Approving Settlement and Compromise of Claims Asserted by And Against First Dominion Funding I, First Dominion Capital, L.L.C., And Key Corporate Capital Inc. ("Lender Settlement"); (ii) Approving Settlement and Compromise of Administrative Expense Claim Asserted by Bliss Manufacturing Employees Associates; (iii) Compelling Debtor to Execute the Lender Settlement Agreement With Respect to the Lender Settlement; (iv) Authorizing the Unsecured Creditors' Committee to Commence Certain Litigation on Behalf of the Debtor And To Use a Portion of the Proceeds of the Lender Settlement; and (v) Compelling the Debtor To Preserve Certain Records, filed December 3, 2001 (Docket # 350); "Stipulated Order," filed January 3, 2002 (Docket # 354); and "Amended Stipulated Order, filed January 24, 2002 (Docket # 357)." "Debtor's Amended Joint Combined Plan of Liquidation and Disclosure Statement Dated March 5, 2002," filed March 15, 2002 (Docket # 366), also authorizes the Committee "to pursue, litigate and/or compromise all Avoidance Actions against non-members of the Committee under the Bankruptcy Code on behalf of the Estate and/or the Debtor." (Am. Joint Combined Plan and Disclosure Statement at 12, ¶ 5.5.) On June 5, 2003, the Court entered an order granting final approval to Debtor's disclosure statement and confirming Debtor's Amended Plan.

the Committee, acting on behalf of the Debtor–in–Possession, filed this adversary proceeding against HMI and two former officers and directors of Bliss, Mark A. Kirk, and Carl H. Young (collectively "Individual Defendants"). The complaint contains three counts: (1) Count I seeks to avoid some or all aspects of the LBO as a fraudulent transfer under 11 U.S.C. § 544(b)(1) and the Ohio Uniform Fraudulent Transfer Act, Ohio Rev.Code §§ 1336.01–1336.12; (2) Count II seeks to recover the fraudulent transfer under 11 U.S.C. § 550(a); and (3) Count III seeks damages against the Individual Defendants for breach of fiduciary duty.

On March 11, 2002, Defendants filed a joint answer to the Committee's Complaint, and a jury demand. Later, Defendants twice amended their answer, on March 22, 2002 and on June 13, 2003 (*see* "Amended Answer of All Defendants" (Docket # 11); "Second Amended Answer of All Defendants" (Docket # 42)). In their Second Amended Answer, Defendants requested that the Court award them attorney fees against the Committee's counsel.

On March 11, 2002, Defendants filed in the United States District Court a motion to withdraw the reference under 28 U.S.C. § 157(d). On October 25, 2002, the District Court issued an order denying the motion without prejudice. The District Court held, among other things, that under 28 U.S.C. § 157(b)(3) the Bankruptcy Court must determine, in the first instance, whether the causes of action in the Committee's Complaint are core or non-core proceedings. (Or. Denying Without Prejudice, Defs.' Mot. to Withdraw Reference Pursuant to 28 U.S.C. § 157(d) (Docket # 23) at 5.) [3]

After the District Court's decision, the Committee filed a "First Amended Complaint," which contains additional allegations in the breach of fiduciary duty count but does not plead any new causes of action. (Docket # 45.) Defendants filed their "Answer of All Defendants to First Amended Complaint," and a jury demand. (Docket # 46.)

This opinion considers these most recent amended pleadings. However, given that the causes of action are the same in the original and amended complaint, the Court's determination on the core/non-core issue would be the same even if it had only considered the Committee's original complaint.

## II. Jurisdiction.

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D.Mich.). At a minimum, the Committee's causes of action are all "related to" the Bliss Technologies bankruptcy case, which is "a case under title 11." [4] No party contests this, al-

---

3. The Court notes that as matters currently stand, any trial of this case must occur in the District Court, rather than in this Court, whether the Committee's claims are core or not. Defendants have demanded a jury trial; their jury demand has not been stricken (and to date the Committee has not moved to strike the jury demand in any respect); and the parties have not consented under 28 U.S.C. § 157(e) to this Court conducting the jury trial. As directed by the District Court's October 25, 2002 Order, however, this Court has continued to supervise the pretrial proceedings and discovery in this case. Several pretrial scheduling orders have been issued, and the parties continue to conduct discovery.

4. *See* 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "district courts have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Under section 157(a), a district court may refer "any and all cases under title 11 and any all proceedings arising under title 11 or aris-

though the parties disagree over whether the causes of action in the case are core or non-core.

## III. Discussion.

A bankruptcy court has the authority to determine whether a proceeding is core or non-core under 28 U.S.C. § 157(b)(3), which provides:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

Resolution of the core/non-core issue will determine the extent of the bankruptcy court's authority to enter a final order or judgment on the claims over which it has subject matter jurisdiction. Consistent with *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court may hear and determine all "core proceedings." The bankruptcy court may also hear non-core proceedings but may not enter a final judgment. In non-core proceedings, the bankruptcy court must:

> submit proposed findings of fact and conclusions of law to the district court,

and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

■■■ While 28 U.S.C. § 157(b)(2) gives a non-exclusive list of matters that are "core proceedings," [5] neither Title 28 nor the Bankruptcy Code explicitly defines the phrase "core proceedings." As the Sixth Circuit has held, two of the phrases used in 28 U.S.C. § 157(a) describe core proceedings—proceedings "arising under title 11" and proceedings "arising in" cases under title 11. *Michigan Employment Security Commission v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1144 (6th Cir.1991) (citing *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir.1987)).

> The phrase "arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and "arising in" proceedings are those that, by their very nature, could arise only in bankruptcy cases. Conversely, if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the

---

ing in or related to a case under title 11" to bankruptcy judges. The United States District Court for the Eastern District of Michigan accomplishes this referral via E.D. Mich. LR 83.50(a)(1).

5. Section 157(b)(2) provides, in pertinent part:

> Core proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate . . .;
> . . .

(E) orders to turn over property of the estate;

. . .

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).

bankruptcy, then it is not a core proceeding.

*Id.* (citing 1 *Collier on Bankruptcy* ¶¶ 3.01[1][c][iii], [v], and *Wood,* 825 F.2d at 97); *see also Browning v. Levy,* 283 F.3d 761, 773 (6th Cir.2002)("Such claims, referred to as 'core' proceedings, either invoke[ ] a substantive right created by federal bankruptcy law or . . . could not exist outside of the bankruptcy.")(citing *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 483 (6th Cir. 1992)).

■ In determining whether a proceeding is core or non-core, "both the form and the substance of the proceeding" must be examined. *Wolverine Radio,* 930 F.2d at 1144 (citing *Wood,* 825 F.2d at 97). " '[T]he word "proceeding" [in the context of a core/non-core analysis] must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action. Any broader meaning would fail to comply with the Constitutional concerns of [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)].' " *Beneficial National Bank, USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.),* 220 B.R. 932, 945 (Bankr.E.D.Tenn.1998) (quoting *Ralls v. Docktor Pet Centers, Inc.,* 177 B.R. 420, 425 (D.Mass.1995)). For this reason, a bankruptcy court "must examine each cause of action separately to determine if it is core or non-core." *Beneficial National Bank,* 220 B.R. at 945; *Hudgins v. Shah (In re Systems Engineering &*

*Energy Management Associates, Inc.),* 252 B.R. 635, 642–43 (Bankr.E.D.Va.2000).

The Court will therefore examine each count in the Committee's complaint separately.

### A. "Count I—Fraudulent Transfer Under State Law and 11 U.S.C. § 544(b)."

■ In Count I, the Committee alleges that Debtor (1) incurred loan obligations to finance Danube's purchase of all of the stock of Bliss from HMI for approximately $31.25 million, and (2) granted "a perfected first priority lien in all or substantially all of [its] assets" to secure the loans. The Committee alleges that the sale of Debtor was a leveraged buy-out which rendered Debtor insolvent, insufficiently capitalized, and unable to pay its debts as they came due. The Committee also alleges that Debtor did not receive "reasonably equivalent value" or "fair consideration" for the loan obligation it incurred. The Committee seeks, under the combination of 11 U.S.C. § 544(b)(1) and the Ohio Uniform Fraudulent Transfer Act, Ohio Rev.Code §§ 1336.01–1336.12, to avoid as a fraudulent transfer, (1) the payment of approximately $31.25 million to HMI for its sale of all of its stock in Debtor to Danube; or (2) the loan obligations that Debtor Bliss Technologies incurred to finance payment of the $31.25 million to HMI, and the associated liens in its assets; or (3) both the payment and the loan obligations/liens. (First Am. Compl. at ¶¶ 23–38.) [6]

---

**6.** It is not entirely clear what relief the Committee is seeking in Count I. On the one hand, it appears that the Committee may be seeking to avoid the loan obligations Debtor allegedly incurred to finance the purchase price Danube paid to HMI for Bliss's stock, and/or the liens Debtor gave in its assets to secure the loan obligations. Count I seeks to avoid "the Transfer." And "Transfer" appears to be defined as the obligations incurred and liens

granted by Debtor in order to finance the leveraged buy-out. (*See* First Am. Compl. at ¶¶ 26, 41.)

On the other hand, it also appears that the Committee may be seeking to avoid the payment of the proceeds of the loan obligations to HMI. In Counts I and II, the Committee seeks a judgment only against HMI, not the unnamed lender(s) to which Debtor owes the

Bankruptcy Code § 544(b)(1) provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

" '[T]he section 544 "strong-arm" provision of the Code allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of all creditors.' " *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 698 (6th Cir.1999) (quoting *NLRB v. Martin Arsham Sewing Cò.*, 873 F.2d 884, 887 (6th Cir.1989), *modified on reh'g on other grounds*, 882 F.2d 216 (6th Cir.1989)).

The Committee contends that the cause of action in Count I is a core proceeding because 28 U.S.C. § 157(b)(2)(H) expressly states that fraudulent conveyance actions are core proceedings, and because this cause of action invokes substantive rights created by § 544(b)(1) of Bankruptcy Code. The Committee relies on an unpublished decision of the United States Court of Appeals for the Sixth Circuit, *XL Sports, Ltd. v. Lawler*, 49 Fed.Appx. 13, 2002 WL 31260355 (6th Cir.2002).

Defendants argue that Count I is not a core proceeding because it does not invoke a substantive right created by bankruptcy law, but rather is "solely a product of State law, wholly independent of federal bankruptcy law." (Defs.' Corrected Br. at 4–5.) They also point out that this adversary proceeding "does not involve claims asserted against the Debtor's estate ... so as to trigger any public rights that arise under federal bankruptcy law." (*Id.* at 5.) Defendants rely primarily on *Zahn v. Yucaipa Capital Fund* (*In re Alma's, Inc.*), 202 B.R. 648 (D.R.I.1996).

The Court agrees with Committee that the Count I cause of action is a core proceeding. First, 28 U.S.C. § 157(b)(2)(H) provides that "proceedings to ... avoid ... fraudulent conveyances" are core proceedings, and a fraudulent conveyance cause of action based on the combination of state law and Code § 544(b)(1), in both form and substance, clearly fits within this category.

Second, the Sixth Circuit's *Wolverine Radio* standard compels the conclusion that a § 544(b)(1) fraudulent conveyance action is core. A case "aris[es] under title 11" when it "involves a cause of action created or determined by a statutory provision of title 11." *Wolverine Radio*, 930 F.2d at 1144. Section 544(b)(1) creates and determines such a cause of action. By its terms, § 544(b)(1) creates a right in the trustee that would not exist but for the bankruptcy. It allows the trustee (and therefore a Chapter 11 debtor-in-possession, *see* 11 U.S.C. § 1107(a)), to "succeed[ ] to the rights of an unsecured creditor in existence at the commencement of the case who can avoid the transfer or obligation under applicable state or local law." 5 *Collier on Bankruptcy* ¶ 544.09[1], at 544–17 (Alan N. Resnick & Henry J. Sommer, ed., 15th ed. rev.2003). In the

---

loan obligations and granted liens. No lender is named as a party in the adversary proceeding. This suggests that the Committee does not seek to avoid the loan obligations and liens, at least not as to the lender(s).

In the present context, however, it is immaterial whether the Committee seeks to avoid

the payment of the purchase price to HMI on the one hand, or the loan obligations and liens on the other hand. In either case, the Court's analysis and conclusion in determining that Counts I and II are core would be the same.

absence of a bankruptcy, for example, a cause of action under Ohio's Uniform Fraudulent Transfer Act could be pursued only by a creditor of Debtor Bliss Technologies, not by Debtor itself (or a creditor's committee acting on behalf of Debtor.) *See* Ohio Rev.Code § 1336.07(A). It is only § 544(b)(1) of the Bankruptcy Code that permits a trustee/bankruptcy debtor-in-possession to pursue such an action.

Although the trustee must satisfy the elements of state fraudulent conveyance law to avoid the transfer, it is federal bankruptcy law that gives rise to and defines this cause of action for the trustee, and state law only supplements the power granted by federal bankruptcy law. *See Perkins v. Petro Supply Co. (In re Rexplore Drilling, Inc.)*, 971 F.2d 1219, 1222 (6th Cir.1992) ("[S]tate ... law is an adjunct to, and supplemental of, those powers specifically provided for in the Bankruptcy Code which enable the trustee to avoid certain transfers.") The trustee's ability to pursue a fraudulent transfer "arises under" 11 U.S.C. § 544(b)(1) because such a cause of action is "only available after a bankruptcy case has been filed and after a trustee has been appointed or the debtor-in-possession has been created." *EWI, Inc. v. Volvo GM Heavy Truck Corp. (In re EWI, Inc.)*, No. 96–61065, 96–6119, 1997 WL 811693, at *3 (Bankr. N.D.Ohio Dec. 5, 1997).[7]

Third and finally, the Court finds persuasive the holding in the unpublished Sixth Circuit case *XL Sports, Ltd. v. Lawler*, No. 01–5363, 2002 WL 31260355 (6th Cir. October 8, 2002).[8] That case held that a proceeding to avoid a fraudulent transfer under 11 U.S.C. § 544(b)(1) and Tennessee common law, as well as a proceeding to avoid a fraudulent transfer under 11 U.S.C. § 548(a), were core proceedings, The Sixth Circuit reasoned:

> Section 157(b)(2)(H) of Title 28 specifically provides that "proceedings to ... avoid ... fraudulent conveyances" are core proceedings. This includes not only avoidance proceedings under § 548(a), but those under § 544(b) as well. And although the substantive law applied in the § 544(b) proceeding would be state law, the claim still arises under title 11 because it is the bankruptcy code that transfers the cause of action from the creditor to the trustee. Section 157(b)(3) tells us also that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." XL's adversary proceeding is thus a core proceeding regardless of whether it is brought under § 548(a) or § 544(b)[.]

*XL Sports*, 2002 WL 31260355, at *7 (internal citations omitted).

Therefore, based on the language of § 28 U.S.C. 157(b)(2)(H), the Sixth Cir-

---

**7.** *See also Martin v. Butcher (In re Butcher)*, Bankruptcy Nos. 3–83–01008, Adv. Nos. 3–86–0184, 3–86–0162, 3–83–01116, 1987 WL 60302, at *1 (Bankr.E.D.Tenn. Nov. 10, 1987)(holding that "Plaintiffs' theories of avoidance and recovery ... premised upon 11 U.S.C.A. §§ 542, 543, 544(b), 548(a)(1) and (2), 549, and 550 (West 1979 & Supp.1987) ... are core proceedings" and explaining that the fact "that the plaintiff trustees seek to avoid transfers as fraudulent under state law does not remove their § 544(b) claims from within the bankruptcy court's core proceed-

ing jurisdiction") (relying on *Duck v. Munn (In re Mankin)*, 823 F.2d 1296 (9th Cir.1987)).

**8.** Although *XL Sports* is a not binding precedent because it is an unpublished opinion, it is persuasive authority because it "has precedential value in relation to a material issue in a case, and there is no published opinion that would serve as well" with regard to the issue at hand. *See* Sixth Circuit Rule 28(g); *In re Braddy*, 195 B.R. 365, 370–71 (Bankr. E.D.Mich.1996).

cuit's *Wolverine Radio* standard for determining whether a proceeding is core, and the Sixth Circuit's decision in *XL Sports*, the Court holds that Count I of the Committee's adversary complaint is a core proceeding.[9]

**B. "Count II—Recovery Under 11 U.S.C. § 550(a)."**

In Count II, the Committee seeks to recover under 11 U.S.C. § 550(a), for the benefit of the estate, the transfer which it seeks to avoid in Count I under 11 U.S.C. § 544(b)(1). Section 550(a) gives the trustee a statutory right to recover a transfer avoided under § 544(b)(1) from certain transferees:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). The Committee alleges that HMI is the "the initial, immediate

or mediate transferee" of such payment or, in the alternative, it is the entity who received the benefit of the transfer.

The Court concludes that this cause of action is core. First, 28 U.S.C. § 157(b)(2)(H) specifically designates as core "proceedings to determine, avoid, or *recover* fraudulent conveyances" (emphasis added). A § 550(a) action, which seeks to recover a transfer avoided under § 544(b)(1), clearly falls within this provision.

Second, the § 550(a) cause of action is one "arising under" Title 11, within the meaning of 28 U.S.C. §§ 1334(b) and 157(a). Such a cause of action is separate and distinct from an avoidance action under § 544(b)(1), and has separate requirements that must be satisfied. *See Yoppolo v. Liberty Mortgage (In re Morgan)*, 276 B.R. 785, 792 (Bankr.N.D.Ohio 2001). One of the elements of a § 550(a) action is that the recovery will benefit the estate. This requirement underscores the fact that there must be a bankruptcy and consequently, a bankruptcy estate for a § 550(a) cause of action to exist. Like § 544(b)(1), § 550(a) is a cause of action that is "only available after a bankruptcy case has been filed and after a trustee has been appointed or the debtor-in-possession has been

**9.** In *Zahn v. Yucaipa Capital Fund (In re Alma's, Inc.)*, 202 B.R. 648, 658 (D.R.I.1996), a case relied on by Defendants, the court held that even though 28 U.S.C. § 157(b)(2)(H) labels a Bankruptcy Code § 544(b)(1) proceeding as core, only an Article III court can enter a final decision in such a proceeding. *Id.* at 659. The *Zahn* court opined:

> ... a core/non-core analysis alone does not define the scope of a bankruptcy court's power. Rather, an Article III court must conduct a separate constitutional inquiry in order to determine whether or not full judicial power by the bankruptcy court comports with the demands of Article III.

*Id.* (citing *In re Texas General Petroleum Corp.*, 52 F.3d 1330, 1336 (5th Cir.1995)).

The constitutionality of the jurisdictional scheme outlined in 28 U.S.C. § 157, however, is not before the Court in this case. Rather, the issue is one of interpreting and applying the relevant statutory provisions of § 157. To the extent the *Zahn* case suggests that those statutory provisions should be interpreted in the light of the Supreme Court's constitutional holding in the *Marathon* case, this Court agrees. But the Court must respectfully disagree with the *Zahn* court's ultimate conclusion that a § 544(b)(1) fraudulent transfer action is to be treated as non-core. As explained above, Sixth Circuit precedent requires a contrary conclusion.

created." *EWI, Inc. v. Volvo GM Heavy Truck Corporation (In re EWI, Inc.)*, No. 96–61065, 96–6119, 1997 WL 811693, at *3 (Bankr.N.D.Ohio Dec. 5, 1997). And § 550(b) limits the trustee's right to recover a transfer avoided under § 544(b)(1) from transferees. It provides:

The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

Because the Bankruptcy Code creates and defines the parameters of the § 550(a) right to recover, a § 550(a) cause of action is a proceeding "arising under" Title 11 and thus is a core proceeding.

## C. "Count III—Breach of Fiduciary Duty."

In Count III, the Committee seeks damages against the Individual Defendants alleging that they breached their fiduciary duties to Debtor and to Debtor's creditors while serving as officers and directors of Bliss, Debtor's predecessor. Count III alleges that the Individual Defendants breached fiduciary duties by assisting in the "formulation and completion" of the sale of Bliss's stock to Danube, and by voting in favor of the sale. The Committee alleges that the Individual Defendants had a conflict of interest because they were shareholders and executive directors of HMI in addition to being officers and directors of Bliss. The Committee alleges further

that the Individual Defendants breached their fiduciary duties to Bliss and Bliss's creditors by engaging in self-dealing—*i.e.*, by entering into separate agreements with HMI for bonuses or severance packages that were predicated either on the completion of the sale of Bliss or termination of employment due to a change of control of HMI. And the Committee contends that the Individual Defendants breached their fiduciary duties by failing to stop the sale of Bliss when they knew the corporation would be rendered insolvent and that creditors would be harmed by the sale. (First Am. Compl. ¶¶ 51–64.)

The Committee argues that the cause of action in Count III is core, relying on *Cape Cod Mortgage Trust, Inc. v. Gee (In re Gee)*, Nos. 98 CIV 4174 BSJ, 83327, 2000 WL 23251 (S.D.N.Y. Jan. 12, 2000); *Stalford v. Blue Mack Transport, Inc. (In re Lands End Leasing, Inc.)*, 193 B.R. 426 (Bankr.D.N.J.1996); and *Harry C. Partridge, Jr. & Sons, Inc. v. M & R Construction Corp. (In re Harry C. Partridge, Jr. & Sons, Inc.)*, 48 B.R. 1006 (S.D.N.Y. 1985). The Committee also argues that its breach of fiduciary duty action is "pursuant to 11 U.S.C. § 544(b) insofar as Plaintiff is asserting the rights of creditors to sue for the former principals' breach of fiduciary duty," and thus it is core. (Pl.'s Response Br. (Docket # 39) at 10.)

The Committee also argues that Defendants' demand for attorney fees in its answer is a counterclaim and a "claim against the estate" under Fed. R. Bankr.P. 7008(b).[10] (*Id.* at 11.) Citing 28 U.S.C. § 157(b)(2)(B),[11] the Committee contends that "[b]ecause Defendants have asserted a claim against the estate, the resolution of

---

**10.** Fed. R. Bankr.P. 7008(b) provides that "[a] request for an award of attorney's fees shall be pleaded as a claim in a complaint, crossclaim, third-party complaint, answer, or reply as may be appropriate."

**11.** Section 157(b)(2)(B), in pertinent part, provides: "Core proceedings include ... allowance or disallowance of claims against the estate."

this proceeding affects the adjustment of the debtor-creditor relationship, and allowance or disallowance of claims against the estate, each of which is denominated as 'core' under 28 U.S.C. § 157." (*Id.* at 11–12.)

The Court disagrees with the Committee and concludes that the Count III breach of fiduciary cause of action is non-core. This cause of action does not fit within one of the "core" categories under 28 U.S.C. § 157(b)(2). First, the Committee's argument that its breach of fiduciary duty cause of action is "pursuant to § 544(b)(1)," and by inference falls under 28 U.S.C. § 157(b)(2)(H), is without merit. Count III does not seek to avoid a transfer or an obligation incurred by Debtor. Rather, it alleges a breach of duty and seeks damages. Section 544(b)(1) therefore does not apply.

Second, the Committee's argument that Defendants have asserted a claim against the estate is without merit. The Committee appears to argue that Defendants' request for attorney fees in answer to the Committee's adversary complaint somehow transforms all of the Committee's counts in the complaint to "core" proceedings, regardless of the nature of these counts. The Committee cites no Bankruptcy Code provision or case law to support this argument, and it is contrary to the case law cited above, holding that the Court must separately evaluate each of the counts in the complaint to determine whether they are core or non-core. Moreover, even construing Defendants' prayer for attorney fees as a counterclaim under Fed. R. Bankr.P. 7008(b), it does not rise to the level of a "proof of claim" filed under 11 U.S.C. § 501, such that it would become part of the claims objection process.[12] Defendants explicitly seek fees from Plaintiff's *counsel* and not the estate.[13] Thus, Defendants' request for attorney fees does not involve the "allowance or disallowance of claims *against the estate*" under 28 U.S.C. § 157(b)(2)(B)(emphasis added), and does not transform Count III into a core proceeding under § 157(b)(2)(B).

Third, Count III is not a core proceeding under either 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate"), or 28 U.S.C. § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.") The Court finds persuasive the cases holding that a state-law breach of fiduciary duty cause of action, which is based on pre-petition conduct, does not, and constitutionally cannot, fit within these provisions.[14]

---

12. And neither HMI nor the Individual Defendants has otherwise filed a proof of claim in the Bliss Technologies bankruptcy case.

13. (Answer of All Defendants to First Am. Compl. (Docket # 46) at p. 17.) Fed. R. Bankr.P. 7008(b) sets forth the procedure for making a demand for attorney fees incurred in an adversary proceeding. Because the Defendants' demand for attorney fees in this case is made against the Committee's counsel and not the bankruptcy estate, the Court does not need to decide whether such a counterclaim would be core or non-core, on the theory that it amounts to a "proof of claim" or otherwise implicates the claims adjudication process under Bankruptcy Code § 502.

14. *See, e.g., Dayton Title Agency, Inc. v. Philadelphia Indemnity Insurance Co. (In re Dayton Title Agency, Inc.)*, 264 B.R. 880, 883 (Bankr. S.D.Ohio 2000)(rejecting the argument that a breach of fiduciary duty cause of action falls within § 157(b)(2)(A) or § 157(b)(2)(O), and explaining that "[t]hese sections are worded so broadly that almost any damages action that might increase the assets of the estate could conceivably fall within their language impermissibly bypassing the [*Northern Pipeline Construction Co. v. Marathon Pipe Line*

Not only does the Committee's breach of fiduciary duty cause of action not fall within the list of matters designated in 28 U.S.C. § 157(b)(2) as "core," but also it does not satisfy the Sixth Circuit's *Wolverine Radio* standard for a core proceeding. It is not a proceeding "arising under title 11," because there is no provision of the Bankruptcy Code that creates a substantive right to sue officers or directors of a corporation for a pre-petition breach of fiduciary duty. Debtor had such a substantive right under state law both before and after it filed bankruptcy.[15] The fact that the Committee has standing to pursue the Debtor's state law breach of fiduciary action, on behalf of the Debtor and for the benefit of the estate, does not equate to the creation of such a substantive right.[16]

Nor is a breach of fiduciary duty cause of action based on pre-petition conduct "determined by a statutory provision of title 11." Rather, a cause of action for a pre-petition breach of fiduciary duty is determined solely by state law, unaffected by the Bankruptcy Code. As such, it is not a proceeding "arising under" title 11. *Wolverine Radio*, 930 F.2d at 1144.

Nor is such a breach of fiduciary duty cause of action one that "could only arise in bankruptcy cases." So it is not a proceeding "arising in" a case under title 11. *Wolverine Radio*, 930 F.2d at 1144.

Therefore, under the *Wolverine Radio* standard for determining whether a proceeding is core or non-core, the Committee's cause of action based on a pre-petition breach of fiduciary duty is "non-

---

*Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)] holding"); *Peterson v. 610 W. 142 Owners Corp.* (*In re 610 W. 142 Owners Corp.*), 219 B.R. 363, 370, 372 (Bankr.S.D.N.Y.1998) (rejecting the argument that a breach of fiduciary duty cause of action falls within § 157(b)(2)(O) because the payment of creditors' claims "were wholly dependent upon recovery" on the action, and thus the action was "equivalent to liquidating the estate or adjusting debtor-creditor relationships and, therefore, [was] core," and instead explaining that bootstrapping prepetition causes of action, premised on state law, into the catchall provisions of 28 U.S.C. § 157(b)(2) ... would " 'emasculate' the Supreme Court's decision in *Marathon*" because "[e]very proceeding [could] be characterized as a core proceeding, because every recovery can change the size of the bankruptcy estate"); *Mellon v. Delaware & Hudson Railway Co.* (*In re Delaware & Hudson Railway Co.*), 122 B.R. 887, 893–94 (D.Del.1991) (rejecting the trustee's contention that the breach of fiduciary cause of action fit under either § 157(b)(2)(A) or § 157(b)(2)(O)).

**15.** This distinguishes the breach of fiduciary duty cause of action in Count III from the § 544(b)(1) fraudulent transfer cause of action in Count I. *See* discussion in part III(A) of this opinion, *supra*.

**16.** *See Hudgins v. Shah* (*In re Systems Engineering & Energy Management Associates, Inc.*), 252 B.R. 635, 644 (Bankr.E.D.Va.2000) (holding that a breach of fiduciary duty cause of action is non-core and reasoning that "[t]he bankruptcy case filing [did] not significantly affect the parties' rights except for the [t]rustee's substitution as representative party of the debtor corporation, or the debtor corporation's creditors, to assert their rights against the corporation's officers"); *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 252 (5th Cir.1988) (explaining that "no substantive interests are created by allowing the Committee to pursue the debtor's state law created cause of action" because "[t]he only change lies in the identity of the agent that actually pursues that state law cause of action on behalf and in the name of [the debtor] ... [which] change is, at most, a procedural device, authorized by the Code, which does not affect state created property interests"); *see also WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 612 (S.D.Tex.1999)(mere fact that a debtor's pre-petition, state law claim is prosecuted on behalf of the debtor by a creditors trust, as authorized by a confirmed plan of reorganization, does not make the claim core).

core." [17]

The cases cited by the Committee are distinguishable from this case. In *Cape Cod Mortgage Trust, Inc. v. Gee (In re Gee)*, Nos. 98 CIV 4174 BSJ, 83327, 2000 WL 23251 (S.D.N.Y. Jan. 12, 2000), the court determined that an adversary complaint alleging, in part, a cause of action for breach of fiduciary duty was "core" based on the facts that (1) the cause of action arose out activities that occurred *post-petition* while the bankruptcy case was pending in Chapter 11 and while the debtor was acting as debtor-in-possession; [18] (2) the activities complained of involved "property of the estate"; and (3) the cause of action was not in existence at the time of the bankruptcy filing and it would not have existed but for the bankruptcy. The *Cape Cod* court explained:

> In the instant case, the claims for malpractice and breach of fiduciary duty would not have arisen, were it not for the debtor's bankruptcy filing. The Trustee's Complaint against the ASSR & D defendants alleges breach of fidu-

ciary duty owed by the chapter 11 debtor-in-possession to his creditors, breaches of fiduciary responsibility of professionals in dealing with estate property, and violations of the bankruptcy code's provisions mandating equitable distribution of the property of the estate.

2000 WL 23251, at *3.

Similarly, in *Stalford v. Blue Mack Transport, Inc. (In re Lands End Leasing, Inc.)*, 193 B.R. 426 (Bankr.D.N.J.1996), the action was filed by a Chapter 7 trustee for breach of fiduciary duty, and was based on conduct that occurred *post-petition*, regarding estate property, and that violated provisions of the Bankruptcy Code.

In this case, the Court does not need to determine whether an action for breach of fiduciary duty that is based on *post-petition* conduct is a core proceeding. That issue is not present in this case. *See, e.g., Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 370 (Bankr.S.D.N.Y.1998)(in which the court found that the cause of action for

---

**17.** *See also Dayton Title Agency, Inc. v. Philadelphia Indemnity Insurance Co. (In re Dayton Title Agency, Inc.)*, 264 B.R. 880, 884 (Bankr. S.D.Ohio 2000)(applying the *Wolverine Radio* standard and holding that "a debtor's state law claim[ ] against an insurance company for . . . breach of fiduciary duty" was a non-core proceeding); *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 370 (Bankr.S.D.N.Y.1998)(explaining that "when [a] cause of action is . . . a creature of state law, as the claims sounding in negligence and breach of fiduciary duty clearly are, the bankruptcy court may not constitutionally enter judgment over [an objection]," and holding that the cause of action based on a pre-petition breach of fiduciary duties was non-core because it "did not involve the application of bankruptcy law")(citing *Carr v. Michigan Real Estate Insurance Trust (In re Michigan Real Estate Insurance Trust)*, 87 B.R. 447, 453 (E.D.Mich.1988)); *Hudgins v. Shah (In re Systems Engineering & Energy Management Associates)*, 252 B.R.

635, 644 (Bankr.E.D.Va.2000) (holding that a breach of fiduciary cause of action is non-core); *Mellon v. Delaware & Hudson Railway Co. (In re Delaware & Hudson Railway Co.)*, 122 B.R. 887, 897 (D.Del.1991)(holding that a breach of fiduciary cause of action is non-core, and explaining that if the court held otherwise, based on the fact "that the proceeds of the action will become part of the sum to be distributed to creditors of the bankrupt debtor, the teachings of the U.S. Supreme Court in *Marathon* would be effectively eradicated."); *Artra Group, Inc. v. Salomon Brothers Holding Co. (In re Emerald Acquisition Corp.)*, 170 B.R. 632, 642–43 (Bankr. N.D.Ill.1994) (holding that the breach of fiduciary count in an adversary complaint arising out of a pre-petition leveraged buy-out was non-core).

**18.** The case eventually converted to Chapter 7 and a Chapter 7 trustee was appointed. *Id.* at *1.

breach of fiduciary duty before the court was non-core, and the court stated that "the prepetition time of [the] claim [was] crucial to [its] finding that [the] cause of action [was] non-core.") The court opined that "[T]he time the cause of action arose ... is directly relevant to a core/non-core analysis." *Id.* (internal quotation marks and citation omitted).

In *Harry C. Partridge, Jr. & Sons, Inc. v. M & R Construction Corp. (In re Harry C. Partridge, Jr. & Sons, Inc.)*, 48 B.R. 1006 (S.D.N.Y.1985), the third case relied on by the Committee, the facts also are materially different from the facts here. The *Partridge* court found that although the adversary complaint asserted various causes of action, including a breach of fiduciary duty claim, "the essence of [the] action implicates a turnover proceeding, which is expressly defined as a core proceeding." 48 B.R. at 1010. That is not the case here.

## IV. Conclusion.

For the reasons stated above, the Court concludes that the causes of action in Count I and Count II are core proceedings, and that the cause of action in Count III is non-core. The Court will enter an order consistent with this opinion.