Avinash N. **RACHMALE**, Plaintiff,

v.

Eugene **CONESE**, Jr. et al., Defendants.

No. 14–04532.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Signed Aug. 18, 2014.

Entered Aug. 19, 2014.

Judy B. Calton, Honigman Miller Schwartz & Cohn LLP, Daniel N. Adams, Robert M. Riley, Tricia A. Sherick, Detroit, MI, for Defendants.

Gerard Mantese, Mantese Honigman Rossman and Williamson, Mark Christian Rossman, Brian M. Saxe, Troy, MI, for Plaintiff.

## *ORDER GRANTING RACHMALE'S MOTION TO REMAND TO STATE COURT AND DENYING DEFENDANTS' MOTION TO TRANSFER TO THE UNITED STATES BANKRUPTCY COURT IN DELAWARE*

MARK A. RANDON, Bankruptcy Judge.

## I. INTRODUCTION

Avinash Rachmale founded and grew Lakeshore TolTest Corporation ("LTC")— in Michigan—into an award-winning, global construction and environmental services company with a book of business valued in

the hundreds of millions. He was once the majority shareholder and proudly served as LTC's CEO, President, and Chairman of the board of directors. But times have changed: Rachmale is currently a minority shareholder; he resigned from LTC's board; and, LTC has filed for bankruptcy.

Rachmale blames Defendants (six directors of LTC, two corporations that contributed equity to LTC, and five affiliated corporations (collectively, "Defendants")) for the company's financial demise, which personally damaged him as a shareholder. He sued Defendants in Michigan's Wayne County Circuit Court for $100 million, asserting state law claims related to Defendants' alleged plan to squeeze him out of LTC.

After Rachmale's lawsuit was filed, LTC and its affiliates—none of whom is a named defendant in this lawsuit—filed for bankruptcy in Delaware, where LTC is incorporated.[1] Defendants timely removed Rachmale's lawsuit to this Court and now move to transfer the case to the Delaware Bankruptcy Court; Rachmale moves for remand.

Defendants contend that Rachmale's claims are intertwined with LTC—and, in some instances, may constitute property of LTC's bankruptcy estate—such that they must be heard in conjunction with LTC's bankruptcy proceeding. Rachmale disagrees. He says that Defendants' attempt to transfer the case to a faraway forum is an unfounded tactical maneuver designed to thwart his legal rights. He believes his claims for personal injuries, which arose in Michigan against non-parties to the bankruptcy, belong in state court. The Court heard argument on the parties' motions on August 7, 2014.

Because the Court has jurisdiction—but nonetheless believes an equitable remand is appropriate—Rachmale's motion to remand is **GRANTED**; Defendants' motion to transfer is **DENIED AS MOOT**.[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. LTC's Promising Beginnings

LTC had its start in Michigan in 1994. That year, Rachmale founded Lakeshore Engineering Services, Inc. ("Lakeshore"), an engineering firm that performed environmental assessment and remediation for construction projects. Over the years, Lakeshore grew quickly in number of employees, revenue, and the significance of its contracts.

In 2010, Lakeshore acquired TolTest, Inc., an engineering and construction firm which, for decades, tackled large infrastructure projects around the world; at

---

1. *In re LTCCORP Gov't Services, Inc.,* No. 14–11113–CSS (Bankr.D.Del.).

2. Even though Rachmale's underlying claims are non-core, the Court may enter a final order: both motions, by their very nature, could exist only in connection with a bankruptcy case, and are therefore core matters over which a bankruptcy court exercises jurisdiction. *See, e.g., Official Unsecured Creditors' Comm. v. Cohen (In re Hearthside Baking Co.),* 391 B.R. 807, 811 (Bankr.N.D.Ill.2008) (finding that the bankruptcy court had jurisdiction to enter a final order on a motion to abstain and remand a non-core "related to" proceeding); *Frelin v. Oakwood Homes Corp.,*

292 B.R. 369, 376 (Bankr.E.D.Ark.2003) (holding that a bankruptcy court had jurisdiction to enter final orders on motions for abstention, remand, and transfer).

3. While some of the facts set out in this section are undisputed, most are taken from the Complaint, to which Defendants have yet to respond. The Court recognizes that Defendants will contest some of these facts as the case progresses: they, in large part, represent Rachmale's view of what happened. This section therefore does not represent the Court's findings of facts, but rather is an attempt to contextualize this matter.

the time, TolTest's annual revenues exceeded $200 million. LTC was the product of the merger. Rachmale became LTC's CEO and President, and, the newly formed LTC raked in over $600 million. LTC's rapid success and positive reputation were acknowledged by the local business community, and it earned a place among *Crain's Detroit Business's* list of the region's fastest growing companies.

### B. The 2011 Gridiron Equity Investment

In 2011—with LTC valued at $150 million—Defendant Gridiron Capital sought to invest in LTC. In exchange for $50 million, Rachmale sold 35% of LTC to Gridiron. As part of the transaction, LTC—then incorporated in Michigan—was reincorporated in Delaware, but its Michigan presence remained strong: LTC's headquarters, principal place of business, and registered office stayed in Detroit, Michigan.[4] Rachmale continued as LTC's CEO and President, and chairman of its board of directors. Half of the board members were directors from Rachmale's group; the other half was comprised of directors from the Gridiron group.

Rachmale says the makeup of LTC's board soon changed: members from his group were replaced with new directors affiliated with Gridiron, ultimately placing Gridiron squarely in control of corporate decision making. These changes marked the start of the sweeping transformations of LTC alleged in Rachmale's Complaint, including: mismanagement of LTC; removal of all persons of Indian descent from top positions at LTC; alienation of Rachmale from LTC's daily affairs and corporate decision making; and, withhold-

ing certain economic dues owed to Rachmale as LTC's part-owner. In July 2011, Defendant Jeff Miller was appointed CFO and Treasurer. Before Miller's appointment, Rachmale had long managed LTC's finances. But Miller did not collaborate with Rachmale, who was then CEO; instead, he opted to take direction directly from the Gridiron group.

By 2012, seven of eight LTC board members were from the Gridiron group; only Rachmale remained. That year, Defendant Grant McCullagh was appointed CEO and President. The fallout found Rachmale without his officer positions and effectively shut out of LTC's affairs; persons of Indian descent were allegedly removed from top positions; and, Rachmale's staff was replaced with McCullagh's own, seemingly unseasoned staff: individuals with comparatively less construction and overseas expertise. LTC also stopped bidding on overseas-market contracts and other strategic growth areas.

### C. LTC's Financial Difficulties

Things began to turn thoroughly sour for LTC throughout 2012 and 2013: jobs—including lucrative projects in Afghanistan—began to fail; new business ceased; cash flow dried up; and, bonding difficulties mounted, leaving a multitude of subcontractors unpaid.

In May 2013, in an effort to shore up LTC's finances, Gridiron contributed $5 million to LTC. In exchange, Gridiron acquired an additional 30% of LTC's common stock—then valued at just $0.89 per share. Rachmale says this value did not account for various underbillings on LTC's accounts, leaving Gridiron with a greatly in-

---

**4.** According to Rachmale, these locations changed in 2013, but remained in Detroit at all times relevant to this lawsuit.

flated portion of LTC stock and Rachmale's shares diluted.

### D. The Detroit Portfolio Transaction

A few months later, Defendants changed the terms of the Detroit Portfolio Transaction. The original terms, discussed in December 2012, were that Rachmale would start his own company—Lakeshore Global—in order to acquire all of LTC's Detroit municipal contracts; transfer 1,175,000 shares of voting common stock to LTC; take over LTC's lease obligations on properties he owned (valued at approximately $8 million), while LTC paid him approximately $2 million to cover the cost of rent (the "Municipal Services Agreement"); and, continue to receive compensation as a company executive through September 2015 (the "Amendment to Employment Agreement").

But, one month before the deal closed, Defendants eliminated the provision providing for Rachmale's acquisition of the Detroit contracts: Rachmale would simply provide consulting services as reasonably requested to support the success of LTC's Detroit municipal contracts. The Detroit Portfolio Transaction was signed—with that one significant alteration—in October 2013.

In December 2013, Rachmale stopped receiving payments under the Municipal Services Agreement. And, in February 2014, Rachmale's compensation and benefits under the Amendment to Employment Agreement ended abruptly. Among other alleged harm, the mortgage on one of the buildings involved in the botched Detroit Portfolio Transaction is in default, and sureties of Lakeshore Global continue to make financial demands against Rachmale.

### E. Rachmale's Resignation

In light of LTC's various dealings and financial difficulties, Rachmale requested documentation and an explanation of financial affairs and corporate condition, including an accounting of bonding contracts in March 2014; his requests went unanswered. Still, Defendants demanded that Rachmale contribute his own finances to cover LTC's various bonding liabilities.

Rachmale resigned from LTC's board of directors on April 2, 2014. Mismanagement, he claims, has led LTC to the brink of financial ruin and, along the way, may have crossed over into illegal conduct.[5] Yet, Rachmale says he has neither maintained a management position nor had any control over LTC's daily affairs since July 2012; and, Defendants have refused to sufficiently or accurately inform him of the true depth of LTC's problems.

### F. Summary of Rachmale's State Law Claims

Rachmale recently filed an 11–count Complaint against Defendants in the Wayne County Circuit Court in Detroit, Michigan. Neither LTC nor any other debtor in the pending bankruptcy case was a named defendant. Defendants removed the case. The counts are summarized below:

#### 1. Count I—Shareholder Oppression

Rachmale alleges Defendants violated their special duty of care to act fairly in the balancing of their personal interests against those of other shareholders. Specifically, Defendants are alleged to have violated Michigan Compiled Laws § 450.1489 by acting illegally; fraudulently; in a willfully, unfair, and oppressive manner; and, self-dealing as to both Rachmale and LTC.[6]

---

**5.** The United States Department of Justice is allegedly investigating LTC.

**6.** On remand, Rachmale has agreed to amend his Complaint to make clear that he only

### 2. Count II—Breach of Fiduciary Duties

Rachmale alleges that some of the Defendants (LTC shareholders, officers, and directors) violated fiduciary duties owed to him: care, good faith, loyalty, and fair dealing.

### 3. Count III—Breach of Contract

This count relates to an alleged violation of the Municipal Services Agreement and Amendment to Employment Agreement. Rachmale concedes that LTC was a party to this agreement—rendering it likely within the realm of LTC's bankruptcy trustee. He has, therefore, agreed to the dismiss this claim.

### 4. Count IV—Breach of Duty of Good Faith and Fair Dealing

This is closely related to count III; Rachmale also agreed to dismiss this count.

### 5. Count V—Tortious Interference

Rachmale alleges that Defendants improperly interfered with and damaged business relationships that he cultivated. These relationships, he says, had a reasonable likelihood of future economic benefit to him.

### 6. Count VI—Civil Conspiracy

Rachmale claims Defendants conspired amongst themselves and with non-parties to cause LTC to engage in misconduct.

### 7. Count VI—Violation of Michigan's Elliot Larsen Civil Rights Act

Rachmale alleges that Defendants took adverse action against him because of his race or national origin, which adversely affected his pay and other terms or conditions of his employment. *See* Mich. Comp. Laws § 37.2201(a).

seeks relief on his behalf—not LTC's—so as

### 8. Count VIII—Unjust Enrichment/Quantum Meruit

Rachmale alleges that by engaging in wrongful actions, Defendants received valuable benefits—at his expense—that would be unjust for them to retain.

### 9. Counts IX, X and XI

Rachmale also agreed to dismiss counts IX, X, and XI (for Removal or Suspension of Director or Officer, Accounting and Payment, and Appointment of Receiver, respectively).

Rachmale's Complaint sets forth no federal claims; Defendants assert federal jurisdiction arising only from LTC's pending bankruptcy.

## III. ANALYSIS

The Court must first determine whether it has subject matter jurisdiction. If it does, the Court must then decide whether it is most appropriate to: (1) abstain from exercising its jurisdiction; (2) equitably remand the case; or, (3) transfer some or all of the claims to the Delaware Bankruptcy Court. If jurisdiction is not proper, the Court must remand.

### A. The Court has Jurisdiction over Rachmale's Claims

 Upon referral from the district court, a bankruptcy court has subject-matter jurisdiction over all cases "under title 11," and all civil proceedings "arising under," "arising in," or "related to" a case under title 11. 28 U.S.C. § 1334(a), (b). Actions "arising under" title 11 involve claims created or determined by a statutory provision of title 11. *In re Bliss Technologies, Inc.,* 307 B.R. 598, 602 (Bankr. E.D.Mich.2004). "Arising in" proceedings are those that are not based on any right

not to invade the trustee's province.

expressly created by title 11, but would not exist outside of the bankruptcy. *Id.*

The parties make various arguments on the applicability of arising in, arising under, and related to jurisdiction. However, under section 1334(b), the Court need not distinguish between these categories: they "operate conjunctively to define the scope of jurisdiction." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir. 1991) (citing *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987)). Here, the Court finds that Rachmale's Complaint minimally provides the Court with "related to" jurisdiction.

An action is "related to" a case under title 11 if its outcome could *"conceivably* have *any* effect" on the bankruptcy estate. *Wolverine Radio Co.*, 930 F.2d at 1142 (finding that even where an indemnification agreement "may ultimately have no effect on the debtor," no *conceivable* effect could not be ruled out; related to jurisdiction was established).

LTC's Articles of Incorporation and Management Agreement may obligate it to indemnify some or all Defendants. Rachmale argues that, because Defendants acted in bad faith, indemnification is not required. But questions of bad faith are factual determinations. And, section 1334(b) "does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding." *Wolverine Radio Co.*, 930 F.2d at 1142. Because any judgment that results from Rachmale's Complaint could *conceivably* effect LTC's bankruptcy estate, through the indemnification provisions, the Court has subject matter jurisdiction.[7]

Jurisdiction exists. The Court finds equitable remand the most appropriate course of action.

### B. Equitable Remand Pursuant to 28 U.S.C. § 1452(b) is Appropriate

Section 1452(b) allows the Court to remand "on *any* equitable ground." 28 U.S.C. § 1452(b) (emphasis added). Courts have established a number of considerations relevant to this determination: (1) duplicative and uneconomical effort of judicial resources in two forums; (2) prejudice to the involuntarily removed parties; (3) forum non conveniens; (4) the state's ability to handle a suit involving questions of state law; (5) comity considerations; (6) lessened possibility of an inconsistent result; and (7) the expertise of the court in which the matter was originally pending[.][8]

---

7. Moreover, after removal, Rachmale stipulated to the dismissal of certain claims, arguably belonging to the bankruptcy trustee. *See Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir.2004) ("[t]he existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal").

8. The Court may also abstain from hearing a particular proceeding "arising under" title 11 of the Code or "arising in" or "related to" a case under title 11 of the Code "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Courts look to a number of similar factors in determining whether permissive abstention under § 1334(c)(1) is appropriate:

(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues:

(3) the difficulty or unsettled nature of the applicable law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

*In re River City Resort, Inc.*, 14–10745, 2014 WL 3700564, at *11 (Bankr. E.D.Tenn. July 24, 2014). The Court has broad discretion to determine whether to equitably remand. *Best v. Galloway (In re Best)*, 417 B.R. 259, 270 (Bankr.E.D.Pa. 2009). The seven considerations relevant to equitable remand are discussed, separately, below.

### 1. Duplicative and Uneconomical Effort of Judicial Resources

■ Rachmale's claims for (1) breach of contract and (2) breach of good faith and fair dealing directly involve LTC.[9] At argument, Rachmale agreed to dismiss these and other claims, most likely to effect the pending bankruptcy proceeding. With these claims dismissed, the possibility of dual litigation is remote. Rachmale also agreed to amend his Complaint, upon remand, to remove all language seeking damages for harm to LTC; any damages sought must be limited to those Rachmale personally and distinctly experienced.

The Court acknowledges the existence of LTC's potential indemnification obligations. But, the effect of this obligation

on LTC's bankruptcy estate—if any—will be minimal, and therefore insufficient to impede the efficient administration of judicial resources. Rachmale would first need to establish Defendants' liability; the court would need to make a finding on bad faith; and, any subsequent claims against LTC arising out of Rachmale's state court lawsuit would then be addressed with the remarkably large number of unsecured creditors listed in LTC's Chapter 7 bankruptcy proceeding—any eventual *pro rata* distribution to Defendants would, thus, be minimal.

Rachmale also emphasizes his request for a jury trial and his unwillingness to consent to the bankruptcy court's jurisdiction. *See* 28 U.S.C. 157(e) ("[i]f the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specifically designated to exercise such jurisdiction by the district court and with the express consent of all the parties"). Rachmale contends that, if the case were to be heard in Delaware Bankruptcy Court, he would

(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of non-debtor parties.

*In re Martin Designs, Inc.*, 08–60431, 2009 WL 2707215, at **6–7 (Bankr.N.D.Ohio Aug. 26, 2009) (citing *Delphi Automotive Systems, LLC v. Segway, Inc.*, 519 F.Supp.2d 662, 670–71 (E.D.Mich.2007)). Here, state law claims predominate over any bankruptcy issues; the

state law claims are only indirectly related to the bankruptcy case; there is no independent basis for bankruptcy court jurisdiction; and, Defendants are all non-debtor parties. While the grounds relevant to equitable remand do not align perfectly with those for permissive abstention, "[t]he analysis under § 1334(c)(1) is largely the same as under § 1452(b)." *In re National Century Fin. Enters., Inc. Inv. Litig.*, 323 F.Supp.2d 861, 885 (S.D.Ohio 2004); *see also Mann v. Waste Management of Ohio, Inc.*, 253 B.R. 211, 215 (N.D.Ohio 2000) ("Permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) are essentially identical."). As such, the presence of factors supporting remand of the lawsuit to state court pursuant to 1452(b) also provide ample equitable grounds for discretionary abstention pursuant to 1334(c)(1).

9. LTC was a party to the contract.

potentially be subjected to two proceedings to obtain a final resolution, should, for example, a district court require additional proof upon *de novo* review. The right to a jury trial weighs in favor of equitable remand. *See In re Cont'l Holdings, Inc.,* 158 B.R. 442, 445 (Bankr.N.D.Ohio 1993) (citing generally *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).

### 2. Prejudice to Rachmale

Given the case's nascency, prejudice is not at issue.

### 3. *Forum Non Conveniens*

Rachmale resides in Michigan; the claims arise out of conduct and events that took place almost exclusively in Michigan; key witnesses and evidence remain here; and, none of the individual defendants is a Michigan resident. Defendants concede that just one event occurred in Delaware: LTC's incorporation. But this, standing alone, is insignificant—Michigan is the most convenient forum.

### 4. Questions of State Law

Issues of state law predominate: Rachmale's Complaint is steeped in state law claims—some of which are statutory. For example, in Count I of his Complaint, Rachmale alleges Defendants violated Michigan Compiled Laws Section 450.1489, which reads, in relevant part:

A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation *or to the shareholder.*

Mich. Comp. Laws § 450.1489(1) (emphasis added). The Michigan Court of Appeals has interpreted this provision to create a direct—not derivative—cause of action for shareholders purportedly abused by individuals in control. *Estes v. Idea Eng'g & Fabrications, Inc.,* 250 Mich.App. 270, 649 N.W.2d 84, 89 (2002).[10] These claims are best-adjudicated by a Michigan court.

Finally, to the extent Defendants argue that Delaware law should apply to some of Rachmale's claims under its shareholder choice of law provision, Michigan courts are capable of applying Delaware law.

### 5. Comity

Comity considerations dictate that "federal courts should be hesitant to exercise jurisdiction when 'state issues substantially predominate[.]' " *Citibank v. White Motor Corp. (In re White Motor Credit),* 761 F.2d 270, 274 (6th Cir.1985). Such is the case here.[11]

### 6. Lessened Possibility of an Inconsistent Result

As discussed above, duplicative litigation is unlikely; remand does not present a likelihood of inconsistent results.

### 7. Expertise of Michigan State Court

Michigan courts are well-equipped to handle the important questions of Michigan law at issue.

## IV. CONCLUSION

Because this Court has jurisdiction—but nonetheless believes an equitable remand is appropriate—Rachmale's motion is **GRANTED;** Counts III, IV, IX, X, and XI of Rachmale's Complaint are **DISMISSED.** Rachmale's remaining claims are **REMANDED;** upon remand, Rachmale shall file an amended complaint strik-

---

**10.** Whether the statute applies to LTC, a Delaware corporation, is another matter. But, this too is best resolved by a Michigan court.

**11.** *See* footnote 6.

ing any language alleging damage to LTC. Defendants' motion to transfer is **DENIED AS MOOT.**

