IN RE Terry Roscoe JOHNSON, Debtor

Case No. 16–10798

United States Bankruptcy Court, S.D. Ohio, Western Division.

Signed February 10, 2017

Robert A. Goering, Cincinnati, OH, for Debtor.

## MEMORANDUM OF DECISION AND ORDER GRANTING MOTION FOR RELIEF FROM STAY

Jeffrey P. Hopkins, United States Bankruptcy Judge

Before the Court is the Motion for Relief from Stay ("Motion") (Doc. 27) under

11 U.S.C. § 362 (d)(1) filed by creditors Jeannette Crain and Joyce Chiles, individually (hereinafter referred to as "Crain," "Chiles," or collectively as "the Movants") and on behalf of ET Building Partnership ("Partnership") and Enterprise Travel, Inc. ("Enterprise Travel").

The Motion asks that the Court grant relief "for the limited purpose of seeking [a] State Court ruling on the proper distribution of ET Building Partnership proceeds from the sale of its real property." [1]

Ostensibly, the Motion asks this Court to allow the State court to wind up the Partnership under Ohio's version of the Uniform Partnership Act and to determine the Debtor's economic interest, if any, after those proceedings have been terminated, included as property of the bankruptcy estate. *See* Ohio Rev. Code § 1776.

The Debtor opposes the Motion, contending that the "automatic stay prohibits Movants from altering debtor's status in the partnership and subsequently liening the partnership property." See Doc. 46 at 1.

The Debtor argues that the Movants have wrongfully attempted to dissociate him from the Partnership, in violation of 11 U.S.C. § 365(e)(2)(A), under an *ipso facto* provision of state law, based on his having filed a petition in bankruptcy. *See* Ohio Rev. Code § 1776.51(F)(1). Further, the Debtor contends that the actions taken by the Movants after the bankruptcy filing have unlawfully divested him of his managing partnership interest and reduced the economic value of his Partnership ownership stake. According to the Debtor, the Court should declare any acts done in violation of the automatic stay void and should direct the removal of the mortgage placed on the Partnership's real estate.

The parties' lawyers were asked to file trial briefs and to present evidence in support of their arguments at a hearing on the Motion established for that purpose. On this score, however, both attorneys' efforts fell well short of the mark. See Docs. 43 and 46. Neither side presented any witness testimony and nothing other than the Partnership Agreement was ever offered into evidence. Both attorneys stated at the hearing that the issues before the Court were purely legal. However, the Court finds that statement without merit.

Arguments of counsel are not evidence. The Court would have benefitted from having witnesses testify with firsthand knowledge of the events leading up to the April 27, 2016 Partnership meeting and the events which took place directly afterwards. As it were, the Court has had to piece together, from the briefs, the admissions of the parties through statements of counsel, and the Partnership Agreement, the facts upon which to predicate its decision.

## SUMMARY OF PRE–PETITION FACTS

As can best be surmised from the scant record presented in the case, the key facts are undisputed. On November 2, 1987, the Debtor and Movants started a business called Enterprise Travel. A few years later, on June 18, 1991, the Debtor and the Movants formed E.T. Building Partnership. The Partnership was created for the sole purpose of owning and operating real estate. On the same day that it was formed, the Partnership purchased real estate located at 3508 W. Galbraith Road in Cincinnati, Ohio 45239 ("Galbraith Rd.

---

1. The term "State court" used throughout this opinion refers to the Hamilton County, Ohio, Court of Common Pleas.

Property"). Enterprise Travel moved its offices into the Galbraith Rd. Property and became a tenant in the building. Enterprise Travel paid monthly rent to the Partnership, which the Partnership used to cover the mortgage, property taxes, insurance, and upkeep and maintenance costs on the Galbraith Rd. Property.

Under the terms of the Partnership Agreement, the Debtor holds a 55% interest, Crain a 35% interest, and Chiles a 10% interest. Debtor's Schedule A/B also lists his Partnership interest at 55%. Paragraph 8.1 of the Partnership Agreement called for the Debtor to serve as managing partner of the Partnership. In addition, the Debtor served as president of Enterprise Travel. The Movants and the Debtor are the only three shareholders of Enterprise Travel. Enterprise Travel formerly employed between five to eight people. The Debtor's duties as president of Enterprise Travel had included making monthly rental payments to the Partnership. In turn, the Debtor's duties as managing partner had been to make the monthly mortgage, insurance, and tax payments on behalf of the Partnership.

In May of 2015, the Debtor was admitted into a rehabilitation center. Neither side presented evidence of what the Debtor's condition had been or how long was his stay in the Center. Subsequently, Crain assumed management responsibilities for the Partnership. The Court is left to assume that Crain became managing partner sometime around May, 2015, given the lack of testimony on the subject. After taking over those duties, Crain alleges in the pleadings that she discovered numerous accounting irregularities. These consisted of erroneous or fraudulent distributions or payments by the Partnership to unknown or fabricated payees. The Movants also allege that the Debtor concealed these unauthorized distributions from them during his tenure as managing partner. Finally, the Movants allege that fraudulent payments appear on the account ledgers for both the Partnership and Enterprise Travel.[2]

As noted, none of the books or records of the Partnership were ever offered into evidence to support the allegations of fraud or that the Partnership's account ledgers had been falsified. Debtor's counsel, however, did not object to these allegations in the briefs. Nor did the Debtor's counsel argue at the hearing that these allegations were false.

On January 26, 2016, the Movants filed a complaint in State court against the Debtor. The State court complaint was not entered into evidence. Thus, the Court must rely on factual representations appearing in the Motion and briefs filed by the parties. Counsel for the Movants contends that the complaint seeks to dissociate the Debtor from the Partnership for wrongful conduct and to wind up the Partnership under Ohio Rev. Code § 1776. However, on March 8, 2016, the Debtor filed a bankruptcy petition under Chapter 13, which stayed any further litigation in the State court proceedings.

## SUMMARY OF POST–PETITION FACTS

On April 27, 2016, the Movants held a Partnership meeting, which the Debtor did

---

**2.** Unrelated to the Partnership, the Movants also allege the Debtor failed to properly fund the 401k retirement accounts of Enterprise Travel's employees despite withholding portions of those employees' wages for that purpose. On July 24, 2015, after sending out notice to all shareholders, Enterprise Travel held a special shareholders' meeting. The Movants attended the meeting, but the Debtor did not. At the shareholders' meeting, the Movants voted to remove the Debtor as president of Enterprise Travel and to appoint Crain to that position.

not attend. The Debtor did not contest whether he received notice of the meeting. At the meeting, the Movants took a vote and resolved to dissociate the Debtor, based on his past wrongful conduct towards the Partnership and other partners. The Movants also voted to dissolve and wind up the Partnership.[3] The Movants subsequently elected Crain to serve as the managing partner to replace the Debtor.

Also, at the April 27 meeting, Crain agreed to loan the Partnership $100,000 to cover the Partnership's liabilities. The Partnership signed a promissory note for $100,000 in favor of Crain. The promissory note was secured by a mortgage on the Galbraith Rd. Property. Crain recorded the mortgage on April 27, 2016, the same day the two documents were signed. Crain's mortgage is the only encumbrance on the Galbraith Rd. Property.

In September 2016, the Partnership entered into a sales contract for the Galbraith Rd. Property with a potential buyer. The sales contract was not introduced into evidence at the hearing. Nor did the Movants identify the potential buyer or the sales price for the property.

The Court held a preliminary hearing on the Movants' Motion for Relief from Stay. Thereafter, the Court set a date for a final evidentiary hearing and established the briefing schedule previously mentioned.

### ISSUES

1) Whether the actions taken by the Movants on April 27, 2016, after the Debtor's March 8, 2016 bankruptcy filing, constituted a violation of the automatic stay under 11 U.S.C. § 362(a)?

2) If those acts violated the automatic stay, whether the stay should be annulled under 11 U.S.C. § 362(d) and the actions taken by the Movants permitted to stand?

3) Whether cause exists to grant the Motion for Relief from Stay under 11 U.S.C. § 362(d)(1) so that the Partnership wind up proceedings can continue in state court, pursuant to Ohio Rev. Code § 1776?

### LAW AND ANALYSIS

1. The Debtor's interest in the Partnership is property of the bankruptcy estate.

The analysis in this case begins with 11 U.S.C. § 541(a). The filing of a bankruptcy petition by a debtor creates a bankruptcy estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

It is well settled law that the assets and property owned by a partnership are not included in the bankruptcy estate of an individual partner. *In re Olszewski*, 124 B.R. 743, 746 (Bankr. S.D. Ohio 1991). Moreover, a partnership may be a debtor in its own right, under 11 U.S.C. §§ 109(a) and 101(41), but a partnership may not seek joint relief with another person, including one of the general partners. *Id.*

In the bankruptcy context, "the debtor's interest in the partnership is included in the estate." *In re Newman*, 875 F.2d 668, 670 (8th Cir. 1989); *In re Olszewski*, 124 B.R. at 746; *In re Foos*, 405 B.R. 604, 607 (Bankr. N.D. Ohio 2009)(a debtor's interest in specific partnership property never becomes property of the bankruptcy estate in the first instance). The nature and extent of the debtor's partnership interests are determined by state law. *Butner v. United States*, 440 U.S. 48,

---

**3.** On April 27, 2016, the Movants held a shareholders' meeting of Enterprise Travel. At the Enterprise Travel shareholders' meeting, the Movants also resolved to terminate its operations and close down the business.

99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Farris*, 41 F.3d 1506 (6th Cir. 1994).

Ohio Rev. Code § 1776.01(P) defines a "partnership interest" as "all of a partner's interests in the partnership, including the partner's economic interest and all management and other rights." The "economic interest" in a partnership is further defined under Ohio Rev. Code § 1776.01(F) to mean "a partner's share of the profits and losses of a partnership and the partner's right to receive distributions." A partner may use or possess partnership property only on behalf of the partnership. Ohio Rev. Code § 1776.41(G).

■■■ Courts have interpreted the Ohio statutes to mean that a partner shares in the ownership of the business and in the profits and losses. Ohio Rev. Code § 1776.41; *Passavant Mem'l Area Hosp. Ass'n v. Lancaster Pollard & Co.*, No. 11 CV 3116, 2012 WL 1119402, at *6 (C.D. Ill. Apr. 3, 2012); *Grendell v. Ohio Envtl. Prot. Agency*, 146 Ohio App.3d 1, 764 N.E.2d 1067, 1077 (2001). In Ohio, a partner possesses a "co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds." *See Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996).

■■■ Based on the foregoing, the Debtor's partnership interests, both economic and in the management rights, became property of the bankruptcy estate on the petition date, March 8, 2016. However, the Galbraith Rd. Property owned by the Partnership did not. *See In re Katz*, 341 B.R. 123, 128 (Bankr. D. Mass. 2006)("A debtor's interest in a partnership is an asset of the debtor's bankruptcy estate under § 541; the assets of the partnership are not."); *In re Magnani*, 223 B.R. 177, 182 (Bankr. N.D. Iowa 1997)("In the bankruptcy case of a partner, property of the estate includes the debtor's partnership interest, but not the assets of the partnership.").

### 2. Violation of the automatic stay

■■■ The Debtor's filing of a bankruptcy petition on March 8, 2016, invoked the protections of the automatic stay. As such, most actions taken against the Debtor's partnership interests on April 27, 2016, were subject to the automatic stay, regardless of whether those interests were economic or related to the management and control of the Partnership. *See In re Cardinal Industries, Inc.*, 116 B.R. 964, 982 (Bankr. S.D. Ohio 1990)(The debtor's management interest was not terminated by his bankruptcy filing.).

In this case, the Debtor's filing of a petition operated as a stay under 11 U.S.C. § 362(a)(1) to prevent "the commencement or continuation ... of a judicial ... action or proceeding against the debtor" and, under 11 U.S.C. § 362(a)(3), as a stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and finally under 11 U.S.C. § 362(a)(6), as a stay against "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

No one disputes whether the lawsuit instituted in State court against the Debtor was stayed as the result of the March 8, 2016 bankruptcy petition filing under 11 U.S.C. § 362(a). The secondary and more difficult issue which must be resolved, however, concerns whether the other acts taken by the Movants at the April 27, 2016, Partnership meeting violated the automatic stay, and thirdly, if those acts violated the automatic stay, were they void or merely voidable and subject to the Court annulling the automatic stay under 11 U.S.C. § 362(d).

■■■ As noted, much of the activities which took place on April 27, 2016, at the

Partnership meeting violated the automatic stay. At the meeting, the Movants voted on whether to dissociate the Debtor from the Partnership. They also elected Crain to serve as the managing partner. At a minimum, these constitute acts "to exercise control over property of the estate." As noted, the April 27, 2016 vote took place a month or so after the Debtor's petition was filed on March 8, 2016. Under 11 U.S.C. § 362(a)(3), the Movants clearly violated the automatic stay by their attempt to dissociate the Debtor from the Partnership and remove him as managing partner.

At the April 27, 2016 meeting, the Movants also agreed to have the Partnership enter a loan agreement with Crain to obtain funds needed to cover certain of the Partnership's liabilities. The Movants caused the Partnership to sign a promissory note for $100,000 in favor of Crain. The note was secured by a mortgage on the Partnership's Galbraith Rd. Property. This, too, constitutes an act "to exercise control over property of the estate."

The Partnership Agreement states that the Debtor's "partnership interest shall constitute the managing partner unless all the then existing partners agree to accept such successor or assignee as managing partner." See Paragraph 8.1 of the Partnership Agreement.

Further, the Partnership Agreement states in Paragraph 8.3(a), in relevant part:

> The managing partner shall be in charge of the managing of the partnership business and shall have full and complete authority to carry out any of the purposes and powers of the partnership except as hereinafter provided. *The following acts or decisions will require consent of the partners who together hold a least sixty-five percent of the total interest in the partnership*:

> (a) *Incurring a partnership liability in excess of $10,000.00.*

(emphasis added).

Given that the April 27 vote to dissociate the Debtor and to incur a Partnership liability in excess of $10,000, albeit to pay for Partnership liabilities, occurred postpetition, the Debtor's partnership interests were adversely effected. At a minimum, the votes and actions taken in both these instances constituted acts to exercise control over property of the estate. The Debtor's partnership interest to serve as managing partner and his economic interest the Partnership were both diminished.

As of the petition date, the Galbraith Rd. Property owned by the Partnership was unencumbered. The April 27, 2016 vote, and actions taken by the Movants while operating under the assumption that the Debtor had been dissociated, contravened Paragraph 8.3 of the Partnership Agreement (which contained a 65% voting requirement and the Movants' partnership interests totaled only 45%). Hence, both the vote and the mortgage of the Galbraith Rd. Property following the April 27, 2016 Partnership meeting violated the automatic stay.

Similarly, given that the Debtor's "partnership interest shall constitute the managing partner" under Paragraph 8.1 of the Partnership Agreement, his ouster and and subsequent replacement by Crain also negatively impacted his partnership interest. As stated, the Partnership Agreement gave the Debtor the right to serve as the managing partner. The vote by the Movants to dissociate him (leaving him without a vote) and to replace him with Crain deprived the Debtor of his ability to continue to serve as managing partner. This detrimentally impacted his partnership interest. Because these activities occurred after the Debtor filed his bankruptcy peti-

tion on March 8, 2016, the acts clearly violated the automatic stay.[4]

3. The acts taken at the April 27, 2016 Partnership meeting were voidable, not void.

Circuits are split over the issue of whether actions done in violation of the automatic stay are void or merely voidable. *See In re Jones*, 63 F.3d 411, 412 (5th Cir. 1995), *cert. denied*, 517 U.S. 1167, 116 S.Ct. 1566, 134 L.Ed.2d 666 (1996).

 Our Circuit, in *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993), recognized that "The Fifth Circuit is alone in explicitly holding that actions taken during the pendency of the stay are voidable." However, *Easley* went on to hold that "actions taken in violation of the stay are invalid and voidable and shall be voided *absent limited equitable circumstances*." *Id.* at 911 (emphasis added).

 One of the "limited equitable circumstances" identified in *Easley* in which the protections of 11 U.S.C. § 362(a) should be unavailable concerned instances "where the debtor is attempting to use the stay unfairly to avoid an unfavorable result ..." *Id.* at 911. *See also Roseman v. Roseman*, No. 93–5099, 1993 WL 513899 (6th Cir. Dec. 9, 1993)(The Court affirmed the application of an equitable exception to the automatic stay when a debtor uses the stay as a litigation tactic unfairly.).

 Based on the record established at the hearing, the Court concludes that the Debtor in this case behaved unreasonably and the equitable exception should apply. The Debtor concedes that he entered into a rehabilitation center in May of 2015. As mentioned, there was no evidence presented as to how long the Debtor stayed in the facility or when he was released. Under the circumstances, the Court infers that during that period the Debtor effectively abandoned his post as managing partner. The Debtor's previous duties of making the monthly mortgage, insurance, and tax payments on behalf of the Partnership were thus left unattended.

Once the Debtor entered the rehabilitation center, the Partnership's managing partner responsibilities fell to the other partners. Ohio Rev. Code § 1776.41(F)("Each partner has equal rights in the management and conduct of the partnership business."). In the Debtor's absence, Crain took on the responsibility of managing the Partnership. It was at that juncture that Crain uncovered the accounting irregularities which the Debtor allegedly committed. According to the Movants, the Debtor had concealed from the other partners numerous distributions to fictitious payees, suggesting that he had pocketed the money. Apparently, all of these payees appear on account ledgers of the Partnership.[5]

The Debtor did not appear at the evidentiary hearing to defend against the Movants' allegations. Nor did Debtor's attorney offer any evidence to refute the

---

4. Under Ohio law, a "partnership agreement" is defined as "the agreement among the partners concerning the partnership, whether written, or oral, or implied." Ohio Rev. Code § 1776.01(N). Moreover, "a partnership is bound by its partnership agreement irrespective of whether the partnership executes the agreement." *Id.*

5. Also, the Debtor left unchallenged the Movants' contention that he had falsified records showing unauthorized payments on behalf of Enterprise Travel. Like in the case of the Debtor's alleged failure to properly fund the 401k retirement accounts of Enterprise Travel's employees previously noted, the Debtor's counsel did not dispute any of these allegations.

Movants' contentions that he unlawfully diverted funds from the Partnership. In the face of such silence, the Court is left with very little choice but to infer that the Movants' contentions of Debtor's wrongful conduct are at least colorable.

The Debtor's wrongful behavior as managing partner, if substantiated by the evidence, could formulate grounds for dissolution of the Partnership in the State court winding up proceeding.[6] Towards that end, the Movants filed a complaint on January 26, 2016, seeking to have the State court wind up the Partnership and to dissociate the Debtor from the Partnership for wrongful conduct, including breach of the Partnership Agreement and violation of his duties to the Partnership, among related claims. Before the State court could reach the merits on these charges, the Debtor filed a petition under Chapter 13 on March 8, 2016. Thus, the automatic stay blocked further wind up proceedings of the Partnership already started in State court under the Ohio Uniform Partnership Act.[7]

The Debtor's failure to testify or even appear at the evidentiary hearing conducted in this Court to lift the stay, coupled with Movants' seemingly credible allegations of wrongful conduct, suggests to the Court that the Debtor's past behavior as managing partner may have breached the Partnership Agreement or violated a duty

to the Partnership, causing harm to it. Under the circumstances, it appears probable that the Debtor may have filed the bankruptcy petition—merely four months after the State court action was instituted—in order to avoid an unfavorable determination by that court. All of this smacks of an unfair litigation tactic. This case fits well within the framework of one of the "limited equitable circumstances" identified in *Easley* in which the protections of 11 U.S.C. § 362(a) should be unavailable.

In this Court's view, the Debtor is "attempting to use the stay unfairly to avoid an unfavorable result[.]" *Easley*, 990 F.2d at 911. Based on the foregoing, the Court concludes that post-petition actions taken by the Movants at the Partnership meeting held on April 27, 2016, and afterwards, were merely voidable rather than void, in recognition of the narrow equitable exception to the operation of the automatic stay. *See also Roseman v. Roseman*, No. 93–5099, 1993 WL 513899, at *5 (6th Cir. Dec. 9, 1993).

In this case, the Court finds that equity prohibits the Debtor from using 11 U.S.C. § 362(a) as a sword to void the Movants' act to replace the Debtor with Crain as managing partner. Indeed, Paragraph 8.1 of the Partnership Agreement permits the

**6.** Ohio Rev. Code § 1776.45(A) provides in relevant part:

A partnership may maintain an action against a partner for a breach of the partnership agreement or for the violation of a duty to the partnership, causing harm to the partnership.

**7.** Ohio Rev. Code § 1776.51 provides in relevant part:

A partner is dissociated from a partnership upon the occurrence of any of the following events:

. . .

(E) On application by the partnership or another partner, a tribunal determines any of the following is cause for expulsion:

(1) The partner engaged in wrongful conduct that adversely and materially affects the partnership business.

(2) The partner willfully or persistently committed a material breach of the partnership agreement or duty owed to the partnership or the other partners under section 1776.44 of the Revised Code.

(3) The partner engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with the partner.

partners to select a successor or assignee to the Debtor when "all the then existing other partners agree to accept such successor or assignee as managing partner." The Movants had little choice but to exercise this option after the Debtor checked himself into the rehabilitation center in May of 2015, abandoned his duties as managing partner, and failed to attend the April 27, 2016 Partnership meeting.

Likewise, the Court finds that equity prevents the Debtor from using 11 U.S.C. § 362 (a) as a sword to void acts taken by the Partnership to borrow funds in the amount of $100,000 from Crain in exchange for a promissory note secured by a mortgage on the Partnership's Galbraith Rd. Property. Based on the Movants' uncontested allegations, these funds were desperately needed in order to cover the Partnership's past liabilities. Those Partnership liabilities were presumably incurred during the Debtor's tenure as managing partner when he had purportedly been derelict in his duties, or at the very least, during his rehabilitation period at the Center.[8]

In any event, the State court is far better equipped than this one for adjudicating whether, when, and on what grounds, if any, the Debtor should be dissociated from the Partnership, its affairs wound up, and business terminated under the applicable provisions of Ohio law. *See* Ohio Rev. Code § 1776.51(E), *see also supra* note 7. Even if the Crain mortgage is later determined by the State court to be invalid, there are provisions under Ohio law to address the concerns that might arise and to protect the interests of any partner who may have been adversely af-

fected, including the Debtor. *See* Ohio Rev. Code § 1776.61–67.

### 4. Permissive abstention is warranted from State court Partnership winding up proceedings.

▆▆▆▆ Effectively, the Debtor is attempting to use his bankruptcy as a mechanism to wind up the Partnership, in lieu of the State court action. If so, permissive abstention is warranted on this single issue. A bankruptcy court may permissively abstain from hearing an action "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Permissive abstention is warranted when it is appropriate to have a State court hear a particular matter of State law. *Osuji v. New Century Mortg. Corp. (In re Osuji)*, 564 B.R. 180, 188–89 (Bankr. E.D.N.Y. 2017)(citations omitted). One court has said it is the "quintessential means for expeditiously directing litigants to the most appropriate forum." *In re James F. Humphreys & Assocs.*, 558 B.R. 764, 768 (Bankr. S.D.W.Va. 2016). Permissive abstention under § 1334(c)(1) is within the sound discretion of the bankruptcy court. *In re Abir*, No. 09–CV–2871, 2010 WL 1169929 at *7 (E.D.N.Y. Mar. 22, 2010).

▆▆▆▆ When boiled down to its core, the dispute in this case between the parties really concerns the Crain mortgage placed against the Partnership's Galbraith Rd. Property. It bears repeating that the Galbraith Rd. Property is owned *solely* by the Partnership; it is not included in the property of the estate. The Debtor is forbidden by well established case law from attempting to administer the Partnership's property—the Galbraith Rd. Property—in his

---

8. Ohio Rev. Code § 1776.41(E) provides:

(E) A payment or advance made by a partner that gives rise to a partnership obligation under division (C) or (D) of this section constitutes a loan to the partnership that accrues interest from the date of the payment or advance.

individual bankruptcy case. "It is a fundamental principle of bankruptcy law that a partnership entity cannot file for relief under Chapter 13 which under 11 U.S.C. § 109(e) is limited to an individual with regular income. *As a corollary to this principle, partnership assets may not be administered in an individual partner's Chapter 13 case." In re Fisk*, 36 B.R. 924 (Bankr. W.D. Mich. 1984)(citations omitted)(emphasis added).

 The Court concludes that it will abstain from administering a Partnership asset in order to avoid an over-extension of bankruptcy jurisdiction. Clearly the Debtor in this case is "seeking to gain the benefits of a partnership liquidation without the necessity of either filing a bankruptcy petition on behalf of the partnership or going [through] a state partnership winding up procedure," which this Court refuses to continence. *In re Olszewski*, 124 B.R. at 748. The result reached here is in keeping with longstanding Sixth Circuit principles on comity which hold that a federal court "should be hesitant to exercise jurisdiction when 'state issues substantially predominate.'" *Citibank v. White Motor Corp. (In re White Motor Credit)*, 761 F.2d 270, 274 (6th Cir. 1985).

At the conclusion of the winding up proceedings in State court, a certain portion of the Debtor's economic interest in the Partnership may be subject to distribution to creditors of the estate under a state law created charging order. *See In re Foos*, 405 B.R. 604, 609 (Bankr. N.D. Ohio 2009)(a debtor is subject to a charging order diverting the stream of profits that otherwise would have flowed to him from the partnership, however, the debtor-partner may still apply the exemptions under Ohio Rev. Code § 2329.66(A)(14) and § 1776.50); *see also Becker v. Becker*, 362 P.3d 641, 644–45 (Nev. 2015)(Responding to a certified question submitted by a bankruptcy court, the Nevada Supreme Court concluded that a debtor's economic interest in stock in a closely held corporation is subject to a charging order remedy except for those amounts that may qualify under the Nevada exemption statutes.); Elizabeth O'Connor Tomlinson, Annotation, Construction and Application of Revised Uniform Partnership Act, 70 A.L.R.6th 209 (2011)("[T]he judiciary will not interpret the Revised Uniform Partnership Act so as to deprive a partner of an otherwise valid exemption. Section 504 (d) of the Revised Uniform Partnership Act provides that the Act does not deprive a partner of a right under exemption laws with respect to the partner's interest in the partnership.").

By abstaining on this limited basis, the Court assures itself that the interests of justice and of comity and respect for state law will be preserved.[9] The Movants and the Debtor, whether he wishes to admit it or not, are both seeking a winding up of

---

**9.** When deciding whether to abstain in an action over which the bankruptcy court has subject matter jurisdiction, bankruptcy judges very often will apply a twelve factor test. Of those listed, the Court concludes that permissive abstention is warranted based on the presence of the following factors: (1) the efficient administration of the estate; (2) state law issues predominate over bankruptcy issues; (3) there was and still remains a related proceeding commenced in State court having jurisdiction over the Partnership winding up under Ohio Rev. Code § 1776; (4) the lack of jurisdictional basis other than 28 *U.S.C.* § 1334; (5) the relatedness or remoteness to the proceeding in the main bankruptcy case; (6) the burden on the bankruptcy court's docket; (7) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. *See Osuji v. New Century Mortg. Corp (In re Osuji)*, No. Chapter 7, 2017 BL 33734, (Bankr. E.D.N.Y. Feb. 02, 2017), *supra*, at 6–7; *also see Rachmale v. Conese*, 515 B.R. 567, 576 (Bankr. E.D. Mich. 2014).

the Partnership and liquidation of the Partnership's sole asset—the Galbraith Rd. Property. These issues are peculiar to state law and adjudication in state court.

Thus, the litigants are redirected to the State court where all the issues under Ohio Rev. Code § 1776 can be properly and expeditiously decided, without this Court unnecessarily injecting itself into those proceedings. If at the end of the State court proceedings, property of the estate subject to a charging order remains, those funds shall be administered by the chapter 13 trustee to benefit creditors of the bankruptcy estate. *See* 11 U.S.C. § 1302.

5. The bankruptcy filing did not cause the Debtor's *ipso facto* dissociation or dissolution of the Partnership.

■ The Movants argue that the Debtor was dissociated at the instant the Debtor filed bankruptcy on March 8, 2016, under the Uniform Partnership Act as adopted in Ohio. *See* Ohio Rev. Code § 1776.51(F)(1)("A partner is dissociated from a partnership upon the occurrence of any of the following events: (F)(1) Becoming a debtor in bankruptcy"). The Movants contend that the Court should grant relief from stay so that the State court can wind up the Partnership.

The Debtor counters by arguing that 11 U.S.C. § 365(e)(1) and 11 U.S.C. § 541(c) render the Ohio statute unenforceable as an *ipso facto* provision. The Debtor asks this Court to deny the Motion to lift the automatic stay; to declare that the postpetition actions taken by the Movants—the placing of a mortgage on the Partnership Galbraith Rd. Property and the attempt to dissociate him from the Partnership—are void as violations of the automatic stay, given that each act detrimentally affected the Debtor's economic and managerial partnership interests.

Because the Court concludes that the equitable exception to the automatic stay applies and that permissive abstention is warranted, we needn't address more fully the Movants' or the Debtor's alternative arguments. We note, however, that the issues raised here meet at the intersection between state and federal bankruptcy law, and that this overlap has long perplexed federal courts attempting to navigate these waters. *See In re Woskob,* 305 F.3d 177, 188 (3rd Cir. 2002).

For the record, however, this Court agrees with the well reasoned decisions from this district in *In re Nizny* and *In re Cardinal Industries, Inc.,* and by the Court of Appeals for the Third Circuit in *Woskob.* These courts all held that upon the filing of a debtor-partner's individual bankruptcy petition under one of the reorganization chapters, 11 U.S.C. § 365(e)(1) prevents the *ipso facto* or automatic dissolution of a partnership by operation of state law.

6. Cause exists for granting the motion for relief from stay.

■ Section 362(d) directs that for "cause" the stay may be modified or annulled "on the request of a party in interest and after notice and hearing". Bankruptcy courts have broad discretion on whether to grant or deny stay relief in order to allow litigation against the debtor in a state court to proceed. *See In re American Spectrum Realty, Inc.,* 540 B.R. 730, 737 (9th Cir. BAP 2009)(Courts traditionally use a twelve factor test for determining whether to modify the stay, the most important of which is the impact on the administration of the bankruptcy estate.).

As discussed, the Court believes that there will be very little impact on the administration of the bankruptcy estate if

the stay is modified in order to allow the winding up proceedings in State court to re-start, which will result in the liquidation of the Debtor's economic interest.[10] The views Judge Clark expressed in *Olszewski* carry similar import in this dispute: the Debtor has "failed to demonstrate that this court has jurisdiction to determine the effectiveness of liens on [a] parcel[ ] of real estate that [is] not part of the debtor['s] bankruptcy estate." *Olszewski*, 124 B.R. at 747.

 The bankruptcy court is not a forum for shopping for ways to remove liens from property that is not property of the bankruptcy estate or for the *de facto* or hybrid winding up of a partnership when the partnership itself is not the actual debtor whose case is being administrated.

 This is especially true here when the Partnership has not come into bankruptcy court seeking relief and the winding up of the Partnership has already begun in State court. The Court will not allow the Debtor to use the bankruptcy court and the automatic stay provisions as a sword to thwart what otherwise will be an orderly liquidation of the Partnership's only asset under Ohio Rev. Code § 1776. *See e.g.,*

*Brennan v. Brennan Associates*, 316 Conn. 677, 113 A.3d 957, 964 (2015) (wherein the Connecticut Supreme Court determined the proper date of dissociation for purposes of valuing the partner's economic interests under an analogous version of the Uniform Partnership Act.); *see also* Allan G. Donn, Donald J. Weidner and Robert W. Hillman, *Rev. Uniform Partnership Act Section § 701 (2016–2017 ed.)*(describing the extensive and complicated process undertaken by state courts to determine the effects of a partner's disassociation before the partnership business is wound up.).

For the reasons provided, the Court directs the following:

a) The Motion for Relief from Stay, seeking to have the state court wind up the ET Building Partnership and rule on the proper distribution of the proceeds from the sale of the Partnership's real estate, among other items which may be adjudicated under Ohio Rev. Code § 1776 is **GRANTED.**

b) The automatic stay under 11 U.S.C. § 362(a)(1), (3) and (6) is **ANNULLED** as to all post petition actions taken by the

---

**10.** Ohio Rev. Code § 1776.51 enumerates events which, by operation of law, cause dissolution of the partnership. Among these events is the determination by a tribunal or State court that a partner engaged in wrongful conduct that adversely and materially affects the partnership business, the partner willfully or persistently committed a material breach of the partnership agreement or duty owed to the partnership or the other partners under Ohio Rev. Code § 1776.44, or the partner engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with the partner. *See* Ohio Rev. Code § 1776.51(E), also see supra note 7. The partnership is not terminated immediately upon dissolution, however, and it continues until completion of the winding up of partnership affairs. *See* Ohio Rev. Code § 1776.63 The

winding up of the partnership involves applying the partnership property to obligations of the partnership, first toward debts owing to outside creditors, and then toward amounts owing to partners for loans, capital contributions, and profits, in that order. Ohio Rev. Code §§ 1776.61 to 1776.67. Until the winding up is complete, the partnership property remains an asset of the partnership. *Id.* The Debtor's economic interest in the partnership does not become property of the bankruptcy estate until the creditors of the partnership are satisfied, including any partner's who are creditors, and each partner's right to any more distributions from the partnership have been satisfied. Ohio Rev. Code § 1776.67. *See In re Doddy*, 164 B.R. 276, 278 (Bankr. S.D. Ohio 1994); *DH–KL Corp. v. Corbin*, 1999 WL 739574 (Ohio App., Sept. 23, 1999).

Movants at the April 27, 2016 Partnership meeting, namely the decision to replace the Debtor with Crain as managing partner and for the Partnership to enter into a promissory note and mortgage on the Galbraith Rd. Property in exchange for a $100,000 loan from Crain needed to pay the Partnership's liabilities.

c) This Court shall retain jurisdiction over the related adversary proceeding and the Court will enter an order setting a pretrial and trial date at a later date. The Movants are **DIRECTED** to file with this Court a status report within thirty (30) days after the conclusion of the State Court winding up proceedings for the partnership.

**IT IS SO ORDERED.**